# Elizabeth Sewell *v.* James C. Moore, Appellant.

*Negligence—Fire escapes—Acts of June* 11, 1879, *and June* 3, 1885.— *Certificates—Evidence.*

Under the act of June 11, 1879, P. L. 128, as amended by the act of June 3, 1885, P. L. 68, prescribing the nature and mode of construction of external fire escapes, but providing that "nothing herein contained shall prohibit any person . . . . from selecting and erecting any other and different device, design or instrument, being a permanent safe external means of escape, subject to the inspection and approval of the constituted authorities for that purpose," a person is at liberty to erect a fire escape different from that described in the act but at his own risk that it shall prove "permanent, safe and external," and that it shall be subject to the inspection and approval of the proper authorities.

The certificate of approval provided by the act of June 3, 1885, P. L. 68, is conclusive evidence of non-liability for fine, damages and imprisonment under the act, but it is not a mandatory requirement, and its ab-

sence creates no liability that would not otherwise arise from the facts. It is evidence only, and the sole effect of its absence is to put on the owner the burden of proof that he has complied with section first by building a fire escape in accordance with its directions, or, under the proviso, he has made a permanent, safe, external escape which is substantially equivalent.

In an action to recover damages for personal injuries alleged to have been caused by the failure of defendant to provide a proper fire escape, a certificate issued by the board of fire escapes, after the fire, is inadmissible. The certificate is only admissible by force of the statute, and that extends only to certificates given on examination and test before the happening of the fire.

Section 3 of the act of June 3, 1885, P. L. 68, giving an action for damages in case of death or personal injuries against owners of buildings who have not provided proper fire escapes, does not raise an absolute liability for all injuries on the happening of a fire, whether the absence of a fire escape had any connection with such injuries or not.

Where the defendant, the owner of the building, had provided a proper fire escape, but the plaintiff was unable to reach it, because the door leading to it had been closed by one of the tenants in the building, whose act the defendant could not control, the defendant is not liable in damages to the plaintiff.

Argued Jan. 22, 1895. Appeal, No. 129, July T., 1894, by defendant, from judgment of C. P. No. 3, Phila. Co., June T., 1892, No. 295, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Trespass for personal injuries. Before GORDON, J.

At the trial it appeared that plaintiff was a factory hand, working in the third floor of a mill of which the defendant was owner. On March 3, 1892, while the mill was in the possession of a tenant, a fire occurred, and the door leading to the fire escape having been locked by the direction of the tenant, plaintiff was unable to reach the fire escape, and was injured by jumping from a window. The evidence tended to show that the fire escape was a permanent, safe and external structure.

When Andrew McGill, a building inspector, was on the stand, he was asked this question: " Q. I hand you a certificate of approval of the fire escape of Mr. Moore's mill, issued February 4th, 1893; does that certificate, which was issued by the board of fire escapes of Philadelphia, approve of a fire

escape in 1893 on this building, which was precisely identical
with that of 1891 ?"

Objected to.   Objection sustained and exception.  [1]

When George J. McCrane, a factory inspector was on the
stand, he was asked this question : " Q. Did you, as factory
inspector, visit the mill of Mr. Moore ?   A. Yes, sir.   Q. Did
you make a report of it in accordance with law ?   A. Yes, sir.

Mr. Beck : What is offered to be proven by this witness ?

Mr. Sellers : By the act of May 20, 1889, P. L. 245, it is
provided by section 12 :

' That if the inspector of factories finds that . . . . the means
of egress in case of fire or other disaster is not sufficient or in
accordance with all the requirements of law . . . . he shall
notify the proprietor of such factory . . . . to make the altera-
tions or additions necessary within sixty days.' . . .

I offer to prove that in pursuance of this duty he visited
these tower fire escapes, and he considered them to be perfectly
safe and proper for escape from fire.

Objected to.

The Court: The duties of the factory inspector are more
comprehensive than those of the board of fire escapes.   Its
functions, so far as this act was concerned, were merely to
inspect and test, or approve or disapprove of the fire escapes.
Factory inspectors are charged with. more comprehensive and
different duties ; among others, that of inspecting all modes of
egress, not only those for escape during fire, but all others, and
other duties that may be related to those of the fire commis-
sioners, but they do not take the place of the other body, and
his approval would in no sense take from the plaintiff her
right of action.   It is purely statutory, and I therefore refuse
the offer."

Exception granted to the defendant.  [2]

Mr. Sellers read section 27 of act of 1893, P. L. 373, by
which it is provided :

" All buildings to be hereafter erected . . . . factory or work-
shop, more than two stories in height, shall have at least one
stairway, accessible from each apartment, which shall be inclosed
with brick walls, . . . and shall have no interior openings other
than the doors from which it is an exit, . . . shall be provided
with a tower fire escape, inclosed in incombustible material,

adjoining one of its fronts. . . . Such fire escape shall be held and taken as a fire escape under the act of . . . June 30, 1885."

Now, I desire to prove that is the kind of fire escape defendant had.

Plaintiff objects. Objection sustained and exception. [3]

Richard C. Borchers was asked this question: " Q. The plan of tower' fire escapes, which you adopted as a mechanical engineer—are those the plans actually adopted in the large mills in the northeastern section of the city which have been erected during the last ten years ? "

Objected to. Objection sustained and exception. [4]

Defendant's points were as follows:

" 1. That if the jury believe that the fire escape for which the certificate of approval of February 14, 1893, was issued, is identical with that in the factory burned, then it affirmatively appears that the owner is relieved from the liability imposed by the act of June 3, 1885, and the verdict should be for the defendant. *Answer :* Refused." [5]

" 2. If the jury believe that the factory inspector, in accordance with section 12 of the act of May 2, 1889 (P. L. 245), found that the means of egress in case of fire was sufficient, then the verdict must be for the defendant. *Answer*: Refused." [6]

" 3. Defendant is not liable for the act of the tenant in locking the door, and if the jury believe this was the proximate cause of the injury, the verdict must be for the defendant. *Answer*: Refused." [7]

Verdict and judgment for plaintiff for $500. Defendant appealed.

*Errors assigned* were (1–4) rulings on evidence, quoting the bill of exceptions ; (5–7) instructions as above, quoting them.

*David W. Sellers, Leon H. Foltz* and *David Jay Myers* with him, for appellant, cited; Act of June 11, 1879, P. L. 128; act of June 3, 1885, P. L. 65 ; act of May 20, 1889, P. L. 245; Pitt. Assn. v. Model Assn., 159 Pa. 308; City v. Hays, 93 Pa. 72.

*James M. Beck, William F. Harrity* with him, for appellee, cited: Com. v. Kitchenman, 46 Leg. Int. 270.

OPINION BY MR. JUSTICE MITCHELL, March 11, 1895:

The learned judge directed a verdict for plaintiff leaving to the jury only the amount of damages, on the view that the statute required the construction of a fire escape in exact conformity to the method and details prescribed, or in case of any variance, the approval of the proper municipal authorities as a mandatory requirement, the absence of which would create a liability to any person injured in consequence of a fire in the building irrespective of any question of negligence or proximate cause. The statute will not bear so·severe a construction.

The act of June 11, 1879, P. L. 128, required certain buildings to be provided with "a permanent safe external means of escape therefrom in case of fire," leaving the determination of the means to be adopted, to the individual owners, subject to the examination and approval of the fire commissioners or other proper officials. A supplement was passed June 1, 1883, P. L. 50, and an amendment to the supplement on June 3, 1885, P. L. 65, neither of which is material to the present case. On the same day however as this last act, June 3, 1885, P. L. 68, was passed an amendment to the act of 1879 which is the statutory law in force at the time of this accident. This act prescribes in great detail the nature and mode of construction of the external fire escape required, but also has a proviso that "nothing herein contained shall prohibit any person . . . . from selecting and erecting any other and different device, design or instrument, being a permanent safe external means of escape, subject to the inspection and approval of the constituted authorities for that purpose." The result of this act with its proviso is that while a design and mode of construction of fire escape are prescribed which if followed will absolutely exempt the owner from the penalties and liabilities of the act, yet he is left at liberty to erect one of a different kind at his own will but at his own risk that it shall prove "permanent, safe, and external," and that it shall be subject to the inspection and approval of the proper authorities.

What then is the effect of a failure to obtain such approval? The act of 1879 made it the duty of fire commissioners and other officials to examine and test fire escapes (the design and construction not being prescribed by the act), and if found satisfactory to grant a certificate of approval. The next sec-

tion imposed certain penalties and liabilities for failure to comply with the act, which will be discussed later on.    The effect of the failure to get a certificate of approval was thus left undefined.    In the second act of 1885, P. L. 70, however, the provision for a certificate of approval was substantially reenacted and it was expressly added, "thereby relieving the party to whom such certificate is issued from the liabilities of fines, damages and imprisonment imposed by this act."    The effect of this clause does not admit of doubt.    The certificate of approval is conclusive evidence of nonliability under the act, but it is not a mandatory requirement, and its absence creates no liability that would not otherwise arise from the facts.    It is evidence only, and the sole effect of its absence is to put on the owner the burden of proof that he has complied with section first by building a fire escape in accordance with its directions, or under the proviso has made a permanent, safe, external escape which is substantially equivalent.

It follows that the evidence offered tending to show the erection of a proper and sufficient escape, as permitted by the proviso to section first of the act of 1885 should have been admitted.    The evidence offered in the first assignment was not admissible, not for the reasons on which it was excluded, but because it was not of the required rank as the best evidence.    The officer who issued the certificate would have been a competent witness as an expert, but his certificate is only admissible by force of the statute, and that extends only to certificates given on examination and test before the happening of the fire.    The second, third and fourth assignments of error are sustained.

The seventh assignment must also be sustained.    The defendant's third point should have been affirmed.    Section 3 of the act of 1885 gives the right of action in these words, "every person . . . . neglecting or refusing to comply with the requirements of section one, in erecting said fire escapes shall be liable to a fine," and be deemed guilty of a misdemeanor, etc.    "And in case of fire occurring in any of said buildings in the absence of such fire escape, approved by certificate of said officials, the said person or corporation shall be liable in an action for damages in case of death or personal injuries sustained in consequence of such fire breaking out in said building . . . . and such

action for damages may be maintained by any person now authorized by law to sue, as in other cases of similar injuries." The construction that this raises an absolute liability for all injuries on the happening of a fire, whether the absence of a fire escape had any connection with such injuries or not, would make the owner responsible for results of which his act was not the cause, or as in the present case, for acts of another over which he had no control. A construction which would make the law of such doubtful constitutionality should not be adopted unless the language renders it imperative. There is no such compulsion here. The last clause of the section quoted, that actions "may be maintained by any person now authorized to sue, as in other cases of similar injuries," shows clearly that what the legislature had in mind was the large and well known class of actions for death and injuries caused by negligence. This act added another to that class. The failure to build a fire escape was made an act of negligence for which a liability attached to the owner, but as in other cases of the same class, a liability only to those injured in consequence of such negligence. There could be no better illustration of the wisdom and justice of this view, than the present case. The undisputed testimony is that the fire escape was safe, sufficient and effective when it was once reached. All the people on the fourth floor escaped by it uninjured. The difficulty was in the locking of the door that led to it on the third floor. The plaintiff got to this door in time, and had it been open as it should have been, she could have escaped without injury as did the others who came to it, some of them after she did. The only proximate and effective cause of the injury was the locking of the door, and that according to the testimony of Taylor, the boss weaver, was done by him at the order of his employers the tenants. It was not the act of the defendant, or of any one over whom he had control or for whose actions he was responsible. The statute does not make him liable except for the consequences of his own act, and there was no evidence on which the jury should have been permitted to find that plaintiff's injuries were the result of anything defendant did or omitted.

Judgment reversed.