### Neagley v. Cassone.

*Negligence—Fire in hotel—Fire-escapes—Failure of guest to try to use fire-escape—Proximate cause—Acts of May 3, 1909, July 18, 1917, June 7, 1919, and April 20, 1921—Province of court and jury.*

1. Where a guest of a hotel is injured by a fire, he cannot recover damages from the owner on the ground that fire-escapes and other appliances as required by the Acts of May 3, 1909, P. L. 417, July 18, 1917, P. L. 1074, June 7, 1919, P. L. 406, and April 20, 1921, P. L. 190, had not been properly installed or maintained, where it appears from the uncontradicted evidence that he locked himself in his room and made no attempt whatever to avail himself of such escapes or appliances, although he had knowledge of them.

2. In such case, the negligence of defendant was not the proximate cause of the injury.

3. As there were no disputed facts, a non-suit was properly entered.

4. Civil liability does not attach for breach of the statute alone; it must affirmatively appear that the injury sustained resulted approximately from such breach.

Motion to strike off compulsory non-suit. C. P. Lehigh Co., Sept. T., 1926, No. 51.

*Dallas Dillinger, Jr.,* for plaintiff and motion; *Butz & Rupp,* for defendant.

Iobst, J., Sept. 6, 1927.—This suit is brought for the recovery of damages arising out of a fire which destroyed the Lafayette Hotel, in the City of Allentown, on Jan. 23, 1926. The plaintiff occupied room No. 38, which was located opposite the elevator on the fourth floor of the building. He was not a transient guest at the hotel, but had occupied a room therein for about seven years, latterly for a period of three years. There were two hallways on the fourth floor, one running from the north end to the south end of the hotel; the other connecting with this hall, running east and west. There was also an open stairway and an elevator giving access from the main floor to the fourth floor. The entrance to room No. 38 was from the hallway running north and south. There was a fire-escape at the southern end of this hall and another fire-escape at the eastern end of the hall leading from west to east, access to this escape being had through a bath-room. An electric call bell was installed in the room. There were no fire-extinguishers on the fourth floor. At the south end of the hallway, at the window leading to that fire-escape, stood a small table about two to two and one-half feet square, upon which stood some flower-pots. The building was a frame structure, the Seventh Street side being five stories in height, while the rest of the building was of three and four stories. The plaintiff was familiar with the premises, and had knowledge of the location of the stairway, elevator and fire-escapes.

On the night before the fire, plaintiff retired to his room at about the hour of eleven o'clock. Sometime after one o'clock in the morning he was awakened by the smoke from the fire. He heard the upstairs maid cry "fire." He saw a light in the hall, caused by the flames. He did not attempt to enter into the hall, but, on the contrary, closed the transom above the door and kept the door of his room locked. There were no flames coming into the

room at that time. Partly dressed, he ran to the window facing Seventh Street and opened it. He saw the fire companies below trying to get a ladder to him. For some reason, the city fire apparatus failed to function properly. After considerable delay, a ladder reached the plaintiff, and thus his life was saved, but, in the meantime, he was severely and painfully burned about his body. For these injuries and the loss of his personal belongings this suit was brought.

At the close of plaintiff's case, counsel for defendant moved to strike out some of the testimony, for the reason that it was at variance with the pleadings. This motion was allowed. Defendant then moved for a compulsory non-suit, and, after argument heard, the court granted the motion. The case now comes before the court upon plaintiff's motion to strike off the compulsory non-suit.

In disposing of this matter, we will consider all of the evidence, including that which was stricken out upon motion.

The plaintiff bases his cause of action against the defendant, owner and operator of the hotel, in that he negligently and carelessly failed to provide a proper, safe and protected building for the entertainment of guests for hire, and that he failed to keep clear from obstruction access to exits from the building; that he failed to install proper signals at the point of access to the exits; that he failed to install an alarm system; that he failed to maintain the building in such a manner as to make it reasonably safe for the entertainment of guests. In the seventh and eighth paragraphs of plaintiff's statement he alleges that he, the plaintiff, was unable to leave said premises, either by inside stairway, elevator or fire-escapes, by reason of his approach to either of said exits being prevented by fire and smoke. There was no testimony offered that the building was an unsafe structure, the plaintiff relying in the trial of his case upon the allegations that the fire-escapes were obstructed, the non-installation of fire-extinguishers, fire-alarms and proper signals at the point of access to the exits.

The legislature of this State in 1909 passed legislation for the safety of persons from panic and fire in hotel buildings: Act of May 3, 1909, P. L. 417. This act was amended by the Act of July 18, 1917, P. L. 1074, Act of June 7, 1919, P. L. 406, and the Act of April 20, 1921, P. L. 190. Regarding the matter now before us, these acts, read together, provide as follows: That any building in this Commonwealth, other than buildings situate in cities of the first and second class, having more than two stories, . . . now used or hereafter to be used, in whole or in part, as (a) . . . hotel, . . . shall be provided with proper ways of egress or means of escape from fire, sufficient for the use of all persons accommodated, assembled, employed, lodged or residing therein, and such ways of egress and means of escape shall be kept free from obstruction, in good repair, properly lighted and ready for use at all times; and all rooms above the second story in said buildings shall be provided with more than one way of egress or escape from fire, which shall be placed as near as practical at opposite ends or sides of the building and leading to stairways on the inside or to stair-towers or fire-escapes on the outside of the building. The legislation further provides for a civil remedy in case of death or personal injury as a result of fire or panic in such building when there is a breach of the statute.

This latter provision regarding civil liability for failure of compliance with the act does not raise an absolute liability for all injuries on the happening of a fire. The failure to comply with the act was made an act of negligence for which a liability attached to the owner, but, as in other cases

Neagley v. Cassone.

of the same class, a liability only to those injured in consequence of such negligence: Sewell v. Moore, 166 Pa. 570, 576. The trouble with plaintiff's case is this, that he failed to make any effort to leave his room. Any number of fire-escapes would have availed him nothing, for he made no attempt to get to them. The obstruction of one of the ways of exit by the small table at the window leading to one of the fire-escapes did not hinder him, because he never was near it. He made no effort to get to the elevator or to the stairway. All that he did after he was awakened by the smoke, and saw the flames and heard the cries of fire, was to remain in his room, close the transom, keep his door locked and await a rescue by means of such apparatus as was available to the firemen. The question for our consideration is whether the negligence of the defendant was the proximate cause of the injury complained of, and when is the determination of that question for the court or the jury. While it is undoubtedly true as a general proposition that the question of proximate cause is for the jury, yet it has been repeatedly held that where there are no disputed facts, the court may determine it: West Mahanoy Township v. Watson, 112 Pa. 574; s. c., 116 Pa. 344; Bunting v. Hogsett, 139 Pa. 363; Gudfelder v. Railway Co., 207 Pa. 629. "In determining what is proximate cause, the true rule is that the injury must be the natural and probable consequence of the negligence; such a consequence as, under the surrounding circumstances of the case, might and ought to have been foreseen by the wrongdoer as likely to flow from his act:" West Mahanoy Township v. Watson, 112 Pa. 574; Pittsburgh So. Ry. Co. v. Taylor, 104 Pa. 306, 315.

The hotel-keeper must provide a reasonably safe structure to secure the safety of the guests. He is not to be regarded as an insurer of their safety. His liability for the condition and operation of his hotel is limited to the failure to exercise ordinary care, because his is an ordinary occupation, fraught with no extraordinary danger: Lyttle v. Denny, 222 Pa. 395. In that case the court says: "It may be assumed, then, that the duty imposed by law upon an innkeeper requires him to furnish safe premises to his guests and to provide necessary articles of furniture which may be used by them in the ordinary and reasonable way without danger."

In the instant case, we must assume that the hotel was a reasonably safe structure, for there was no evidence to the contrary. The acts of assembly referred to do not compel the hotel-keeper to install fire-extinguishers or an electric fire-alarm system.

It is a well-established principle of the law that civil liability does not attach for breach of the statute alone, but it must affirmatively appear that the injury sustained resulted proximately from said breach.

In these cases negligence is never assumed but must be proven, and the mere fact of negligence or violation of the provisions of a statute is not enough unless it is further shown that such negligence or violation proximately caused the injury.

This latter doctrine is laid down by our Supreme Court in the case of Sewell v. Moore, 166 Pa. 570, 576, wherein the court says: "The failure to build a fire-escape was made an act of negligence for which a liability attached to the owner, but as in other cases of the same class a liability to only those injured in consequence of such negligence. There could be no better illustration of the wisdom and justice of this view than the present case. The undisputed testimony is that the fire-escape was safe, sufficient and effective when it was once reached. All the people on the fourth floor escaped by it uninjured. The difficulty was in the locking of the door that

Neagley *v.* Cassone.

led to it on the third floor. The plaintiff got to this door in time, and had it been open as it should have been, he could have escaped without injury as did the others who came to it, some of them after he did. The only proximate and effective cause of the injury was the locking of the door, and that, according to the testimony of Taylor, the boss weaver, was done by him at the order of his employers, the tenants. It was not the act of the defendant or of any one over whom he had control or for whose actions he was responsible. The statute does not make him liable except for the consequences of his own act, and there was no evidence on which the jury should have been permitted to find that plaintiff's injuries were the result of anything defendant did or omitted."

In the case of Acton *v.* Reed, 93 N. Y. Supp. 911, the hotel proprietor failed to provide the structure with stand-pipes, as required by the building code of the City of New York. The deceased had been a guest at the hotel, occupying a room on the sixth floor. His death was due to suffocation by smoke while endeavoring to escape from the burning building. The principal acts of negligence claimed to have been established at the trial and by reason of which the recovery was sought to be sustained were that a door upon the sixth floor leading to an interior stairway was locked at the time of the fire; that there was no diagram in the room occupied by the deceased, indicating how to get out of the building, as provided by the charter of Greater New York, and that there were no stand-pipes in the building, as required by statute and the city building code. The Supreme Court said: "The building did not have the stand-pipes required. The defendants, therefore, had failed to comply with the statute and were *prima facie* negligent if the omission to supply them contributed in any way to the decedent's death. The statute, by reason of the height of the building, imposed a duty on the defendants to erect the stand-pipes, and their omission to do so gave a cause of action in favor of any one entitled to its observance and injured by the breach. The trouble, however, with the plaintiff's case in this respect is that the proof is overwhelming that if there had been stand-pipes they could not and would not have been used, and, therefore, the omission to have them in no way contributed to the decedent's death. . . . The fact that after he came out of his room he proceeded by way of the stairs to the fifth floor indicates that he knew how to get out of the building, so that the absence of a diagram in his room in no way could be said to have been the cause of his death. . . . Much testimony was offered on the part of the defendants to the effect that the door [which led from the sixth floor to the floors below] was not locked. . . ." The court said: "It was of no importance, however, whether it was locked or not, inasmuch as testimony had been offered, which was uncontradicted, to the effect that the deceased came out of his room, locked the door and proceeded by another stairway to the floor below; that he never tried to descend by the interior stairway, and, therefore, even if it be conceded that it was locked, it in no way impeded the deceased's exit from the building."

"Failure of an innkeeper to put fire-escapes on the building, as required by an ordinance, does not render him liable for death of a guest who perished in a fire therein, it not being shown that he was at a window or in any position where a fire-escape would have afforded him any benefit; there being evidence that he had locked himself in his room and was heard beating on his door, trying to make his escape, and one of the windows of his room having overlooked another building onto the roof of which he could have safely leaped and thereby have escaped, as others similarly situated did:" Syl., Weeks *v.* McNulty et al., 48 S. W. Repr. 809. Similar cases are Radley et al. *v.* Knepfly, 135 S. W. Repr. 111; Louisville Trust Co. *v.* Morgan, 203 S. W.

Neagley *v.* Cassone.

Repr. 555; Pauley *v.* Steam Gauge and Lantern Co., 29 N. E. Repr. 999 (New York Court of Appeals).

In the instant case, plaintiff locked himself in his room. He made no attempt to use the means of escape at hand. If there had been fire-extinguishers in the hall they might have been of some use to him, but none being there did not affect his situation, because, locked in his room, he could not have used any of them. Whether the halls were lighted or not begs the question, for he never came out of the room. The table in the hall at the window did not impede his progress to the fire-escape, because he never tried to get to it. We regret the unfortunate injury and the loss of the lives of others in the building at the time of this catastrophe, but we have failed to discover any causal connection between the defendant's negligence and plaintiff's complaint.

We are, therefore, of the opinion that plaintiff's motion to strike off the compulsory non-suit be dismissed.

Now, Sept. 6, 1927, after due consideration of the record in this cause, plaintiff's motion to strike off the compulsory non-suit is refused.

From Edwin L. Kohler, Allentown, Pa.