Vandenberg *v.* Siter et al., Appellants.

Argued September 18, 1964. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Robert F. Jackson,* for appellants.

*Samuel Lichtenfeld,* for appellee.

OPINION BY FLOOD, J., November 12, 1964:

The plaintiff, a grower and dealer in Holland, sued the defendants for the balance of the purchase price of certain tulip and hyacinth bulbs. The defendants counterclaimed for $9,036.97 averring breach of an express warranty that the bulbs were sound and healthy at

the time of the shipment and implied warranties that they were merchantable and fit for the purpose for which they were sold.

The contract contained the following clause of warranty: "The seller warrants the goods to be sound and healthy at the time of shipment but does not otherwise warrant flowering or other planting, growing or forcing results . . . All claims hereunder shall be deemed waived unless presented within eight (8) days after receipt of the goods."

The trial judge excluded or struck from the record all testimony offered by the defendants to show breach of warranty, so far as it related to the condition of the bulbs more than eight days after delivery to the defendants, including testimony that the bulbs did not flower properly, that while they appeared in good condition on the day after delivery upon inspection by the defendants, one month later some brown specks were discovered, that Mr. Rotteveel, the expert, was then called in to examine them. It also included testimony by the expert that when he examined the bulbs in the two cases in which the specks were discovered, he found that the bulbs were grown beyond their capacity in Holland, so that they would dry up and "destroy the usefulness of the bulb"; that they were not merchantable, that some of the tulip bulbs were "not worth planting"; that he advised the defendants not to plant them, and the defendants' testimony that these two cases were destroyed. As to the delay in giving notice of the breach, the defendants offered testimony that the defective character of the bulbs could not be discovered until flowering time some months after October 18, 1960, the delivery date, together with testimony by the expert that it could not be discovered except by cutting them open, and that when he cut some open about the middle of November he discovered this condition, but it would not be observable a month earlier

to the extent that it would be later on since it develops as the season progresses; that it was the custom of the trade to inspect the Easter flowering and that Anthony Vandenberg, on behalf of the plaintiff, did make such inspection thirty-five days before Easter, and that defendants did not learn of the defect until the plants were taken to the greenhouse and uncovered about thirty-five to forty days prior to Easter in the case of the tulips, and about twelve days to three weeks before Easter in the case of the hyacinths.

In making these rulings, the court took the position that no testimony as to what happened more than eight days after the delivery date was admissible even though it related to a condition existing at the time of shipment but not discoverable until later. The effect of these rulings was to eliminate the evidence in support of the defence and the counterclaim, and the verdict was for the plaintiff in the amount of its claim.

1. In limiting the warranties as he did, the trial judge ignored the word "otherwise" in the express warranty. We repeat the important language: "The seller warrants the goods to be sound and healthy at the time of shipment but does not otherwise warrant flowering . . ." While this means that flowering is not warranted unless the failure to flower results from an unsound or unhealthy condition of the bulbs at time of shipment, it is equally obvious that the seller does warrant that at the time of shipment the bulbs were capable of flowering properly. Since the defendants' evidence was that failure to flower properly resulted from a condition which existed at the time of shipment because the bulbs had grown beyond their capacity in Holland, the failure falls within the terms of the express warranty if the jury believes this evidence.

It is true that nothing which occurred after delivery which made the bulbs unfit or unmerchantable would be a breach of either the express or implied war-

ranties. Indeed, the plaintiff insured against such mishaps during transit, and gave the defendants credit for an amount received from the insurer apparently on a claim that two rejected cases of the bulbs were damaged in transit. There was, however, no evidence that the damage to the bulbs involved in the suit occurred in transit. On the contrary, as we have noted, the defendants offered expert testimony tending to show that the defect for which the counterclaim is laid occurred prior to delivery and existed at the time of delivery.

The plaintiff argues (1) that the bulbs were inspected by persons who are inspectors for the Dutch and American Governments and were found to be sound,[1] and both the plaintiff and the Government of Holland go to great lengths to see that nothing is wrong with the bulbs being shipped because of the advantage to them in making sure that they ship only sound and healthy bulbs; (2) that so many things can happen after delivery that are not under the control of the plaintiff that it has the right to limit its warranty and there is therefore no implied warranty after this moment; and (3) that the defendants, as well as the plaintiff, have been in this business for a long time and know that no shipper of bulbs guarantees flowering results since that part of the growing process is strictly under the control of the grower and there are too many variables that could result in poor flowering.

None of these arguments, however, go to the admissibility of the evidence offered by the defendants,

---

[1] The certificate of inspection, apparently signed by both Dutch and American officials was received in evidence (Plaintiff's Exhibit No. 5) over objection, but should have been rejected because there was no proper foundation laid for its admission. 5 Wigmore on Evidence §§1674-1676. See *Sewell v. Moore*, 166 Pa. 570, 575, 31 A. 370, 372 (1895).

but only to its weight and credibility. Nor do they affect the proposition that if the failure to flower properly results from the unsound or unhealthy condition of the bulbs at the time of shipment the seller is liable under the express warranty in the contract. The case of *Dutch Mill Gardens v. Grullemans and Sons, N. V.,* 238 S.W. 2d 232 (Tex. Civ. App., 1951), is cited by plaintiff as being identical. In fact it is far from supporting the plaintiff's position. It indicates only that any warranty will be excluded when the contract clearly so states. In that case the contract stated: "No warranty is given for the results of planting, forcing, or flowering of any bulbs and roots." The word "otherwise" does not appear. The contract before us contains no such clear exclusion of liability for failure to flower under any circumstances.

The express warranty herein is not inconsistent with an implied warranty of merchantability under §2-314 of the Uniform Commercial Code of April 6, 1953, P. L. 3, amended October 2, 1959, P. L. 1023 (12A PS §2-314), nor with an implied warranty of fitness for a particular purpose, under §2-315 of the code (12A PS §2-315). Indeed the express warranty coincides with such implied warranties in so far as the express warranty covers sound and healthy bulbs and warrants flowering capacity at shipment. Consequently the expert testimony as to these implied warranties should not have been stricken.

2. While the defendants did not present their claim until several months after they received the bulbs, it was for the jury to say, under proper instructions, whether the eight day limitation is reasonable and binding upon them under the circumstances. Several provisions of the Uniform Commercial Code affect this question. Section 2-607 (12A PS §2-607) provides that the buyer must give notice of the breach of the contract of sale "within a reasonable time after he dis-

covers or should have discovered any breach . . . ." Section 2-608 (12A PS §2-608) provides: "(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it . . . ." Finally, §1-204 (12A PS §1-204) provides: "(1) Wherever this Act requires any action to be taken within a reasonable time, the agreement may fix any time which is not manifestly unreasonable. (2) What is a reasonable time for taking any action depends on the nature, purpose and circumstances of such action."

Under the defendants' evidence which was stricken out by the court below, the defects in the bulbs which prevented flowering, though existing at the time of delivery, were latent, and not known to the defendants at the time of planting and could not be discovered thereafter by the buyer until flowering time. The defendants argue that this makes the eight day limitation unreasonable under §1-204 of the code, supra.

Undoubtedly the parties may by their contract limit the time for the buyer's notice of claim for breach of warranties, but the limitation must be reasonable. A limitation which renders the warranties ineffective as regards latent defects, literally covered by the warranty but not discoverable within the limitation period of the contract, is manifestly unreasonable and therefore invalid under §1-204 of the code. The evidence offered by the defendants on the question of the timeliness of the notice under the circumstances should have been received and left for the jury's consideration, along with the countervailing evidence of the plaintiff.

Where the facts are in dispute, the question of the reasonableness of the time when notice of breach of warranty was given is for the jury. *U. S. Gypsum Co. v. Birdsboro Steel Foundry Co.,* 160 Pa. Superior Ct. 548, 52 A. 2d 344 (1947); *Nat'l Container Corp. of*

*Pa. v. Regal Corrugated Box Co.*, 383 Pa. 499, 119 A. 2d 270 (1956). This is particularly true when the defect is not discoverable upon an ordinary inspection. Thus, it has been held that where a defect is discoverable only by microscopic examination the question of time for notice of a claim based on an alleged breach of warranty was for the jury under all the facts. *Wolstenholme, Inc. v. Jos. Randall & Bro., Inc.*, 295 Pa. 131, 139, 144 A. 909, 912 (1929). In *Victorson v. Albert M. Green Hosiery Mills, Inc.*, 202 F. 2d 717, 720 (3d Cir., 1953), 41 A.L.R. 2d 806, 811, the court said: "The latent-defect cases constitute a well-recognized, separate category in the Pennsylvania decisions construing reasonable time," citing *Industrial Rayon Corp. v. Caplan*, 125 Pa. Superior Ct. 414, 418, 190 A. 185, 186 (1937).

While in most of the cases just cited there was no time limitation in the contract, the question whether the time limitation is "manifestly unreasonable" under §1-204 of the code is, under the circumstances of this case, clearly for the jury under proper instruction. See *Torrance v. Durisol, Inc.*, 20 Conn. Supp. 62, 122 A. 2d 589 (1956); *W. T. Adams Machine Co. v. Turner*, 162 Ala. 351, 50 So. 308 (1909).

The rulings of the court below striking out defendants' evidence on the defence and counterclaim and rejecting defendants' offer of proof under the counterclaim were erroneous and require a new trial. The result of the court's rulings referred to was that the issues involved in the defence and counterclaim were not defined or presented to the jury. Both the question as to whether the bulbs were healthy and sound as regards flowering capacity at delivery, and the question whether the defendants gave notice of the alleged breach of warranty within a reasonable time, were for the jury.

Judgments reversed with a procedendo.