BADGETT CONSTRUCTION AND
DEVELOPMENT COMPANY,
Plaintiff,

v.

KAN–BUILD, INC. and Quaker
Window Products Co.,
Defendants.

Kan–Build, Inc., Third–Party Plaintiff,

v.

Quaker Window Products Co.,
Third–Party Defendant.

Quaker Window Products Co., et
al., Third–Party Plaintiffs,

v.

Weatherall Indiana, Inc., f/k/a
Weatherall Company, Inc., et
al., Third–Party Defendants.

No. Civ. 4–97–CV–30243.

United States District Court,
S.D. Iowa,
Central Division.

March 3, 2000.

Deborah M. Tharnish, William J. Koehn, Davis Brown Koehn Shors & Roberts PC, Des Moines, IA, for Plaintiff.

Karl T. Olson, Bradshaw Fowler Proctor & Fairgrave, Des Moines, IA, William L. Dawe, III, Hopkins & Huebner, Des Moines, IA, William A. LArson, Gehrt & Robert, Topeka, KS, for defendant Kan–Build, Inc.

Frank A. Comito, Kent A. Gummert, Gaudineer & Comito LLP, Des Moines, IA, Thomas L. Orris, Armstrong Teasdale Schlafly & Davis, St. Louis, MO, for defendant Quaker Window Products Co.

Thomas J. Logan, Hopkins & Huebner, Des Moines, IA, for Weatherall Indiana, Inc.

Jack Hilmes, Finley Alt Smith Scharnberg Craig, Hilmes & Gaffney PC, Des Moines, IA, for Bernard Bower.

## RULING ON KAN–BUILD'S MOTION FOR PARTIAL SUMMARY JUDGMENT

WALTERS, Chief United States Magistrate Judge.

This matter is before the Court on defendant Kan–Build's motion for partial summary judgment (# 57), filed October 1, 1999. Plaintiff was the owner/developer of a construction project involving several buildings in Fairfield, Iowa, known collectively as "The Raj," and contracted with defendant Kan–Build to construct, deliver, erect and rough set three modular buildings at the site. Plaintiff claims the buildings developed problems and Kan–Build denied liability based on remedy and warranty limitations in the building contracts.

Plaintiff filed the present action on April 11, 1997. In its Second Amended Complaint, plaintiff makes claims of breach of contract, breach of warranty, negligence and fraud against Kan–Build. Plaintiff seeks damages including, but not limited to costs of repair, lost profits and decrease in the value of the property, as well as punitive damages under the fraud claim. The parties consented to proceed before a United States Magistrate Judge and the case was assigned to the undersigned on October 21, 1997. *See* 28 U.S.C. § 636(c).

Defendant Kan–Build's motion urges that plaintiff's breach of contract, breach of warranty and negligence claims are precluded by the limitation-of-remedies and limitation-of-warranties provisions contained in the agreements between the parties. Plaintiff's resistance contends there are genuine issues of material fact regarding the enforceability of the warranties and remedies limitations which preclude entry of summary judgment.

Hearing was held on the motion on January 18, 2000. A jury trial of this matter is scheduled for March 27, 2000. The motion is fully submitted.

### I.

Defendant's motion for summary judgment is subject to the following well-established standards. A party is entitled to summary judgment only when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Wabun–Inini v. Sessions*, 900 F.2d 1234, 1238 (8th Cir. 1990) (citing Fed.R.Civ.P. 56(c)); accord *Munz v. Michael*, 28 F.3d 795, 798 (8th Cir.1994); *Woodsmith Publishing Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir.1990). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A genuine issue of fact is material if it "might affect the outcome of the suit under governing law." *Hartnagel,* 953 F.2d at 395 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

In assessing a motion for summary judgment a court must determine whether a fair-minded jury could reasonably return a verdict for the nonmoving party based on the evidence presented. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The court must view the facts in the light most favorable to the nonmoving party, and give that party the benefit of all reasonable inferences which can be drawn from them. *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348; *accord Munz,* 28 F.3d at 796; *Kopp v. Samaritan Health System, Inc.,* 13 F.3d 264, 269 (8th Cir.1993). The court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue meriting a trial. *Grossman v. Dillard Dep't Stores, Inc.,* 47 F.3d 969, 971 (8th Cir.1995); *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). A conflict in the evidence ordinarily indicates a question of fact to be resolved by the jury. *Schering Corp. v. Home Ins. Co.,* 712 F.2d 4, 9 (2d Cir.1983).

## II.

Plaintiff Badgett Construction and Development Corp. ("Badgett"), a Florida corporation with its principal place of business in Fairfield, Iowa, is the owner and developer of the Raj. Defendant Kan–Build, a Kansas corporation, is in the business of constructing modular buildings. In 1991 Badgett and Kan–Build entered into a Dealer Agreement in which Badgett agreed to be a dealer for Kan–Build. (Ex. A).

In late 1991 Badgett and Kan–Build entered into an agreement wherein Kan–Build agreed to design, construct, deliver, erect, and rough set a building consisting of two modular sections, "The Villa," at Badgett's prepared site in Fairfield. The parties have been unable to locate a written contract with respect to this building. Badgett disputes that a written contract was ever entered into. The parties also dispute whether the terms of the agreement for the Villa would have been the same as the written contracts for the other buildings. In his deposition testimony, Badgett's owner, Rogers Badgett, testified he assumed that the agreement under which the Villa was constructed was similar to the contracts under which the other buildings were constructed. (Ex. D, Depo. R. Badgett at 108, 119–25).

On March 24, 1992, the parties entered into a written contract wherein Kan–Build agreed to design, construct, deliver, erect, and rough set a building consisting of 32 modular sections, "The Clinic," at the same site. (Ex. B; Ex. 1). On January 8, 1993, the parties entered into another written contract wherein Kan–Build agreed to design, construct, deliver, erect and rough set a building consisting of ten modular sections, "Hotel–18," at the same site. (Ex. C; Ex. 2).

Kan–Build completed its work on the Villa on May 10, 1992, (Ex. E, Aff. of Samples), although plaintiff claims it is still investigating the completion date, attaching copies of field crew time cards to its resistance to motion for partial summary judgment. (Ex. 5). Kan–Build asserts it completed work on the Clinic on July 1, 1992. (Ex. E, Aff. of Samples). Again plaintiff claims it is still investigating the completion date, attaching copies of field crew time cards showing work through July 10, 1992. (Ex. 5A). Kan–Build asserts it completed work on the Hotel on September 10, 1993. (Ex. E, Aff. of Samples). Plaintiff claims it is still investigating this completion date, attaching field crew time cards showing work through June 19, 1993. (Ex. 5B).

Badgett discovered some water damage problems in the Clinic in 1993, primarily around windows and the heat pump trim. (Ex. F, Terry Depo. at 116). The extent of the problems at this point is in dispute. Apparently Badgett attempted to remedy the problems with caulking. In the sum-

mer of 1994 Badgett discovered some further moisture/mildew damage in limited areas. According to Badgett, in 1995 widespread and serious signs of water damage and structural problems with the buildings were discovered. (Ex. 4, Mantle Depo. at 107, 115–16, 143–45, 167, 171, 211–12, 219, 240).

Badgett contacted Kan–Build about some of the problems by telephone in the spring of 1995. (*Id.* at 111). In approximately October 1995 Kan–Build representatives visited the site and inspected the buildings. (*Id.* at 148; Ex. 9). Badgett followed with written notice of water and moisture/mildew problems on October 30, 1995. (Ex. H). According to Mark Mantle, Physical Plant Manager for Badgett, Kan–Build's representatives allegedly made representations that if the problems had been caused by Kan–Build, Kan–Build would correct them. (*Id.*) Kan–Build subsequently refused to correct the defects (Ex. 4, Mantle Depo. at 143–52).

In the course of examining the buildings to determine the cause of the water penetration and moisture/mildew problems, Badgett discovered alleged significant structural problems and deficiencies. (Ex. 7). Plaintiff provided written notice to Kan–Build of the alleged structural problems on or about December 29, 1995. (Ex. I). This lawsuit was filed on April 11, 1997.

Badgett claims it inspected the modular sections upon receipt at the site. (Ex. 10, Terry Depo. at 57–60). It further claims it did not and could not have discovered latent design and construction defects behind the walls and within the modular building structures, in part because the sections are delivered finished except for the "marriage lines" between the units. (Ex. 4, Mantle Depo. at 213; Ex. 13, Prichard Depo. at 60–61).

### III.

*A. The Contract Provisions and the Parties' Contentions*

Kan–Build argues that plaintiff's claims of breach of contract, breach of warranty and negligence are precluded by limitation of remedy and limitation of warranty provisions found in the written contracts between the parties for the Clinic and Hotel buildings. These provisions state:

21.  [Kan–Build's] sole liability to [Badgett] shall be as described by this Agreement. Except as described in this Agreement, in no event shall [Kan–Build] be liable for any special, indirect, incidental, or consequential damages, whether arising by breach of contract, negligence, tort, or strict liability.

22.  For a period of one year from the date of completion of [Kan–Build's] work, [Kan–Build] hereby warrants to [Badgett] that the work will be constructed in conformity with the plans and specifications of this Contract and be free from defects in materials or workmanship. As the sole remedy under this warranty, [Kan–Build] agrees to repair or replace any such defective parts, at no cost to [Badgett]. This warranty shall apply only if [Badgett] shall give written notice to [Kan–Build] of each particular defect complained of within such one year period. This warranty shall not apply to defects which are the result of: normal wear and tear, any work performed by others, improper foundation construction, storms, fire, floods or Acts of God, deterioration from unusual causes, misuse or criminal acts after the date on which construction commences. . . .

\*   \*   \*   \*   \*   \*

THE ABOVE WARRANTIES ARE EXCLUSIVE AND ARE IN LIEU OF ALL OTHER WARRANTIES EXPRESS OR IMPLIED, AND ALL IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE ARE HEREBY DISCLAIMED, AND EXCLUDED FROM THIS

AGREEMENT, EXCEPT AS MAY BE STATED HEREIN.

(Exs. B and C).

The contracts contain two additional express warranties having to do with the design and function of the buildings. The first such express warranty in ¶ 2 of each contract varies somewhat between the contracts. The second express warranty, in ¶ 5, is the same in each contract. These warranties state:

> 2. Contractor warrants that the modular building sections have been designed and will be constructed as a Combination Type Occupancy. Construction for Use Group R–1, B–1 in accordance with: (a) the 1988 UBC Basic/National Building Code, all type 5A construction, (b) the 1988 UBC Basic/National Plumbing Code, (c) the 1988 UBC Basic/National Mechanical Code, and (d) the 1990 National Electrical Code.

(Ex. 1—The Clinic).

> 2. Contractor warrants that the modular building sections have been designed and will be constructed as a Combination Type Occupancy. Construction for Use Group R–1, A–3 in accordance with: (a) the Uniform Building Code and appendices, 1991 edition, the Uniform Building Code standards, 1991 edition, as published by the International Conference of Building Officials (b) the Uniform Plumbing Code, 1991 edition, as published by the International Association of Plumbing and Mechanical Officials (c) the Uniform Mechanical Code, 1991 edition, as published by the International Association of Plumbing and Mechanical Officials, and (d) the national Electrical Code, 1990 edition, NFPA No. 70–1990, as published by the National Fire Protection Association (e) the Model Energy Code, 1989 edition, as published by the Council of American Building Officials, and (f) the 1992 ADA code requirements.

(Ex. 2—the Hotel).

> 5. . . . The Contractor warrants that if the building is constructed in accordance with such plans and specifications, the building will properly function as shown on such plans, specifications, and exhibits, customary for this type of building.

(Exs. 1 and 2).

The Clinic contract incorporates the law of Iowa, the Hotel contract incorporates that of Kansas. (*Id.* at ¶ 16). At hearing the parties agreed there is no relevant difference between the law of the two states.

Kan–Build's position is that the first sentence of ¶ 21 providing that its "sole liability" is "as described by this Agreement" means that ¶ 22, with its one-year warranty and limitation to repair and replacement costs, the only terms of the contract which expressly provide Badgett with any remedy, applies to all warranties under the contract and disclaims any liability for negligent design. Kan–Build says it did not receive timely notice of any defects, therefore Badgett is out of court on all of its contract, warranty and negligence claims.

Badgett counters that the remedial and time limitations on which Kan–Build relies are invalid and unenforceable either because they fail of their essential purpose or are manifestly unreasonable. If the limitations in ¶ 22 are unenforceable as failing of their essential purpose, Badgett argues the consequential damages limitation in ¶ 21 is also invalid. Alternatively, Badgett urges that Kan–Build is estopped from asserting the contractual time-bar in ¶ 22 based on its October 1995 representations to plaintiff about repairing the buildings.

### B. *The Villa*

■ Preliminarily concerning the Villa, there is a genuine issue of material fact about whether there ever was a written contract, and if the contract was oral, about the terms of the contract. The only evidence in the summary judgment record of the terms of the Villa contract is Mr. Badgett's assumption that they were similar to the contracts for the hotel and clinic because he would not have "[bought] a

building from someone with no warranty and no nothing and assume all the risk." (Ex. D, Badgett Depo. at 124–25). Mr. Badgett's assumption does not support a conclusion that it is beyond dispute that the warranty provisions in the Villa contract were identical. His deposition indicates he does not know the fact of the matter. It seems doubtful that if there was only an oral agreement the terms would have been as detailed or comprehensive as those described in ¶¶ 2, 5, 21 and 22 of the written Clinic and Hotel contracts. Also, Mr. Badgett has stated that at one time he was told by Kan–Build representatives that a "ten year extended warranty" would apply to the purchase of the buildings. (Ex. I at 2). Because the summary judgment record does not adequately establish the existence of a written contract or the terms of an oral contract for construction of the Villa, the motion for partial summary judgment must be denied with respect to the defects claimed in connection with that building.

## C. *The Hotel and Clinic*

Turning to the written contracts for the other buildings, both Iowa and Kansas have adopted ¶ 2–719 of the Uniform Commercial Code which provides:

Contractual modification or limitation of remedy

1. Subject to the provisions of subsections 2 and 3 of this section and of the preceding section on liquidation of damage,

   a. the agreement may provide for remedies in addition to or in substitution for those provided in this Article and may limit or alter the measure of damages recoverable under this Article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts; and

   b. resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

2. Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this chapter.

3. Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

Iowa Code § 554.2719 (1999); Kan.Stat. Ann. 84–2–719 (1998).

As previously stated, Kan–Build contends that ¶¶ 21 and 22 of its contracts taken together with the bold-face exclusion of other warranties at the end means that "Badgett's sole remedy against Kan–Build for any alleged defects in design or construction was the repair or replacement of the defective work or product" hence there is no right of recovery beyond the express warranty remedy in ¶ 22. Badgett responds that ¶ 21 is ambiguous and therefore must be construed strictly against Kan–Build as the party claiming the benefit of its restrictions. *See Laverty, Inc. v. Mel Jarvis Construction Co., Inc.,* 513 F.2d 1307, 1309 (8th Cir.1975); *Elite Professionals, Inc. v. Carrier Corp.,* 16 Kan. App.2d 625, 634–35, 827 P.2d 1195, 1202–03 (1992); *Manning v. International Harvester Co.,* 381 N.W.2d 376, 380 (Iowa App. 1985).

Ambiguity is a question of contract construction and interpretation for the Court. *Hartig Drug Co. v. Hartig,* 602 N.W.2d 794, 797 (Iowa 1999). An ambiguity is present when "a genuine uncertainty exists concerning which of two reasonable interpretations is proper." *Id.* (citing *Berryhill v. Hatt,* 428 N.W.2d 647, 654 (Iowa 1988)). The Court believes the language in ¶ 21 providing that Kan–Build's "sole liability to [Badgett] shall be as described

by this Agreement" clearly and unambiguously disclaims direct liability to Badgett based on negligence, or any other theory, unless such liability is described in the agreement. *See Laverty*, 513 F.2d at 1309; *Iowa Elec. Light and Power Co. v. Allis–Chalmers Mfg. Co.*, 360 F.Supp. 25, 33 (S.D.Iowa 1973). The consequential damages exclusion in ¶ 21 does refer to claims of negligence as well as other theories of recovery. The reference, however, is clearly intended to emphasize the breadth of the exclusion in view of the hold-harmless provision in ¶ 7 which protects Badgett from third-party claims due to Kan–Build's default, not to preserve the causes of action described. Paragraph 21, therefore, does not admit of two reasonable interpretations, alone or in context with other contractual provisions. Since Kan–Build's direct liability to Badgett for negligence is not otherwise provided for in the contracts, the parties have contractually excluded such liability.

The bold-face limitation of warranties at the end of the contract also clearly precludes recovery on any theory of warranty except the express warranties stated in the contracts.

■ The Court does not agree, however, that the sole remedy for breach of all the express warranties in the contracts is that provided for in ¶ 22. Paragraph 22 contains an express warranty concerning the *construction* work performed by Kan–Build—that it conforms to the plans and specifications and is free from defects in materials or workmanship. The limited one-year repair or replacement remedy is the "sole remedy under *this* warranty." (emphasis added). *"This* warranty" (emphasis added again), the paragraph continues, applies only if notice is given within the one-year period. By their terms the limitations in ¶ 22 pertain only to the warranty in that paragraph and do not extend to the express warranties of design and function found in ¶¶ 2 and 5 of the contracts. Recovery under these latter warranties is limited as to time only by reasonableness and the statute of limitations,

U.C.C. ¶ 1–204, and as to remedy, by the overarching exclusion of consequential damages in ¶ 21. *See* U.C.C. ¶ 2–719(3).

To the extent Kan–Build argues that the contracts should be construed so that the sole remedy for all of the warranties in the contracts is the one-year repair or replacement warranty in ¶ 22, the contract is at best ambiguous if not, for the reasons just noted, at odds with the clear language of the contract. No party has identified any relevant extrinsic evidence on the point, accordingly the resolution of any ambiguity is a matter of law for the Court. *Hartig Drug*, 602 N.W.2d at 797. The "repair or replacement of defective parts" described in ¶ 22 is clearly focused on remedying defects in the construction of the buildings, as is the one-year period to discover and remedy such defects. Kan–Build's construction and interpretation of the contract would leave Badgett in many circumstances without an effective remedy for the express warranties in ¶¶ 2 and 5. The Court is reluctant to conclude this is what the parties intended unless a fair reading of the contract requires it, as it is more reasonable and likely when the contract is viewed as a whole that the parties intended Badgett should have the relief available for violation of these express warranties subject to the limitation on damages in ¶ 21.

■ Badgett next argues that the warranties and damages limitation clauses in ¶¶ 21 and 22 of the written contracts are invalid because they fail of their essential purpose within the meaning of U.C.C. § 2–719(2). While Badgett refers to both paragraphs, its argument is focused on the one-year period for making claims in ¶ 22.

In the Court's judgment the temporal limitation raises a question under the U.C.C.'s proscription against time periods which are "manifestly unreasonable," U.C.C. § 1–204(1), *see* Iowa Code § 554.1204, Kan.Stat.Ann. 84–1–204, not one bearing on the essential purpose of the remedy itself. The limited remedy is repair or replacement. Repair or replace-

ment would fail of its essential purpose only if the defects in the buildings could not be repaired. In that event, Badgett would be denied "the substantial value of the bargain." U.C.C. § 2–719 cmt. 1; *see* 1 J. White & R. Summers, *Uniform Commercial Code* (4th Ed.) § 12–10 at 661.

The Eighth Circuit's opinion in *Hartzell v. Justus Co., Inc.*, 693 F.2d 770 (8th Cir. 1982), is instructive. At issue was the sale of a log home construction kit. The home was assembled and the homeowner had numerous problems which he claimed were attributable to the seller. The seller defended on the basis of a limitation-of-remedies clause which limited its liability to repair or replacement. The court affirmed a verdict for the plaintiff which included damages for diminution in market value. *Id.* at 773. The court reasoned that under the instructions, the jury must have found "that the structural defects were not entirely remediable." *Id.* The court explained further as follows:

> [W]here the house sold was found by the jury to fall short of the seller's promises, and where repairs could not make it right, defendant's liability cannot be limited to the cost of repairs. If the repairs had been adequate to restore the house to its promised condition, and if Dr. Hartzell had claimed additional consequential damages, for example, water damage to a rug from the leaky roof, the limitation-of-remedies clause would have been effective. But that is not this case.

*Id.* at 774. *See Soo Line R.R. v. Fruehauf Corp.*, 547 F.2d 1365, 1369 (8th Cir.1977) (limited repair remedy failed of its essential purpose where seller refused to make repairs and repairs performed by plaintiff did not restore railroad cars to an acceptable operating condition); *see also Select Pork, Inc. v. Babcock Swine, Inc.*, 640 F.2d 147, 149 (8th Cir.1981). At hearing Badgett's counsel acknowledged that the defects in the buildings are repairable. Accordingly, repair or replacement can give Badgett what it bargained for and the limitation does not fail of its essential purpose.

■ Kan–Build has evidently refused to make repairs because it believes the notice given by Badgett was untimely. The Court agrees with Badgett that application of the one-year limitation to latent defects or conditions which could not reasonably have been discovered within the one-year period raises a valid question about whether the limitation is manifestly unreasonable and therefore invalid under U.C.C. ¶ 1–204(1). These were contracts for the construction of modular buildings incorporating pre-assembled sections to be used as a hotel and related purposes. Undoubtedly the parties intended the buildings would have a useful life many years beyond the one-year period for construction defect claims. They knew that not all construction defects could be discovered by inspection at the time the modular sections were installed. The parties provided for a joint inspection after the sections had been placed on the foundation, and agreed that the inspection report would "constitute proof of the extent of any defects, damages, or missing items except defects, damages, or missing items which could not be reasonably expected to be discovered by visual inspection." (Exs.1, 2, ¶ 11). Shifting the risk of latent construction defects to the buyer after only a year eliminates remedies under the contract except for those ascertainable by inspection or which appear quickly. In similar circumstances courts have held time limitations to be unreasonably short. *See Community Television Services, Inc. v. Dresser Industries, Inc.*, 586 F.2d 637, 641–42 (8th Cir.1978), *cert. denied*, 441 U.S. 932, 99 S.Ct. 2052, 60 L.Ed.2d 660 (1979) (in which the court noted, though it did not rely on, the trial court's finding that a six-month warranty of material and workmanship in the case of a television and radio broadcasting tower was manifestly unreasonable in light of the tower's twenty-five year useful life); *Q. Vandenberg & Sons, N.V. v. Siter*, 204 Pa.Super. 392, 398, 204 A.2d 494, 498 (1964) ("a limitation which renders the warranties ineffective as regards latent defects, literally covered by the warranty but not discoverable within the limitation

period of the contract, is manifestly unreasonable and therefore invalid under § 1–204 of the code"); *Held v. Mitsubishi Aircraft Intern., Inc.*, 672 F.Supp. 369, 382–83 (D.Minn.1987) (warranty limitations in connection with sale of aircraft extending up to three years held manifestly unreasonable as applied to an alleged latent design defect).

At hearing Kan–Build maintained that applying a discovery rule to the limitation period in ¶ 22 would avoid any unreasonableness. Citing *Powell v. Tordoff*, 911 F.Supp. 1184, 1194 (N.D.Iowa 1995), Kan–Build argues that the one-year period began running when Badgett knew of the harm and its cause, which here was still more than a year before Badgett gave notice of the defects. *See Roth v. G.D. Searle & Co.*, 27 F.3d 1303, 1307 (8th Cir.1994) (applying Iowa law, limitations period runs from when person discovers, or in the exercise of reasonable care should have discovered, the alleged wrongful act).

For the purposes of the present motion the Court will construe ¶ 22 as incorporating a discovery rule.[1] There are genuine issues of material fact about when Badgett discovered the design and construction defects on which it bases its claims. The principal problem with the buildings is the penetration of moisture into the exterior walls as a result of alleged improper installation of the windows and the heat pumps, and structural problems discovered in the course of investigating the moisture problems. The record indicates the moisture problems developed over time. At what point along the continuum Badgett's early indications of water problems ripened into knowledge of the harm and its cause sufficient to put Badgett on notice cannot be

determined as a matter of undisputed fact from the summary judgment record.[2]

In concluding, it might be helpful to summarize how the Court construes the contracts in light of Kan–Build's motion for partial summary judgment.

1. The motion papers do not establish beyond dispute the terms of the contract pertaining to the construction of the Villa. On this state of the record, therefore, there is no contractual limitation on the remedies or theories of recovery with respect to defects associated with the construction of that building beyond those found generally in the U.C.C. as adopted by Iowa.[3]

2. The remedial and time limitations in ¶ 22 of the contracts apply only to the express warranty in that paragraph and do not apply to the express design and function warranties in ¶¶ 2 and 5 of the contracts.

3. The contracts, principally ¶ 21 and the exclusion of other warranties provision, preclude recovery on theories of negligence and breach of contract, (beyond breach of the warranties stated therein). The damages exclusion in ¶ 21 of the contracts precludes recovery of consequential damages.

It follows that Kan–Build's motion for partial summary judgment is denied with respect to the Villa, granted with respect to the contract, negligence and implied warranty claims pertaining to the other buildings, and denied with respect to all express warranty claims.

IT IS SO ORDERED.

---

1. As Badgett notes in its supplemental brief, the propriety of implying a discovery rule as a matter of contract construction, thereby adding a term the parties did not themselves set forth, is doubtful.

2. In light of the resolution of this issue it is not necessary for the Court to address Badgett's alternative argument that Kan–Build is

equitably estopped from invoking the one-year contractual limitations period by false representations about its intent to repair the buildings.

3. In the absence of proof of a choice of law provision, the construction of the building in Iowa would appear to make Iowa law applicable.