# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-1830

_____

Alan Todd Brown, individually and on behalf of all others similarly situated

*Plaintiff - Appellant*

v.

Louisiana-Pacific Corporation

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: October 20, 2015
Filed: April 12, 2016

_____

Before RILEY, Chief Judge, SMITH and SHEPHERD, Circuit Judges.

_____

SMITH, Circuit Judge.

Alan Todd Brown appeals the district court's[1] grant of summary judgment to Louisiana-Pacific Corporation (LP) on Brown's claims for fraudulent

_____

[1]The Honorable Stephanie M. Rose, United States District Judge for the Southern District of Iowa.

misrepresentation, unfair or deceptive practices, and breach of warranty against LP for the purported defectiveness of its TrimBoard product. We affirm.

## I. *Background*

The following facts are undisputed. LP's former subsidiary, ABT Building Products Corporation (ABT), manufactured and sold TrimBoard, an exterior building component intended for use as trim in housing construction. In 2003, Brown purchased a lot from Bryan Clark Holmes, LLC in Urbandale, Iowa, and hired Bryan Clark to construct a home on the property for Brown and his wife. When discussing construction materials with Clark, Brown emphasized the importance of finding a siding-and-trim product that would not cause the rotting and buckling problems present in Brown's prior home. TrimBoard was ultimately the product selected and installed on Brown's home.[2]

The TrimBoard installed on Brown's home came with a ten-year limited warranty; it provides, in relevant part:

> Louisiana-Pacific Corporation (LP) warrants its TrimBoard, exclusive of finish, against delamination, checking, splitting, cracking and chipping of the basic substrate for a period of ten years from the date of installation under normal conditions of use and exposure, providing the trim is properly stored, installed, maintained, and protected as specified in LP's Application Instructions. Should the product fail within ten years of the date of installation, LP, after investigation and verification, will replace the defective trim on the following basis: LP will compensate the owner for repair and replacement of the affected trim no more than twice the original purchase price of the affected trim if failure occurs within ten years.

---

[2]As the district court noted, "the parties dispute: (1) whether Mr. Clark explicitly discussed TrimBoard as an option with [Brown], and (2) whether [Brown] had any role in the selection or purchase of TrimBoard."

Brown never viewed informational or advertising literature for TrimBoard, never spoke to any representative of LP about the TrimBoard product, and did not see a copy of the limited warranty prior to the product's installation on his home.

In August 2004, Brown moved into his new home. Sometime in 2010, Brown noticed damage to certain pieces of the installed TrimBoard and contacted Clark, who advised Brown of the ten-year limited warranty. Brown located a copy of the limited warranty on LP's website and filed a warranty claim. In response to Brown's warranty claim, LP sent a warranty representative to inspect Brown's house and identify the damaged TrimBoard. LP offered Brown $197.67 in compensation for the damaged TrimBoard, which Brown rejected. In January 2011, Brown hired a local contractor to replace various pieces of TrimBoard on his house, at a total cost of $1,700.00, inclusive of labor and materials. Brown admits that only some of the TrimBoard had failed and needed to be replaced by January 2011 but contends that he "subsequently . . . has learned that TrimBoard is not a quality product and not moisture resistant."

Brown subsequently filed this putative class action, alleging claims for negligence, fraudulent misrepresentation, breach of warranty, and unfair or deceptive practices, and requested declaratory relief and money damages. Pursuant to LP's dismissal motion, the district court dismissed Brown's claim for negligence and permitted the remaining claims to proceed. LP then moved for summary judgment on all remaining claims. In response to LP's motion for summary judgment, Brown relied on relevant portions of Clark's affidavit. In that affidavit, Clark indicated that he had purchased all of the materials for installation on Brown's residence, including TrimBoard. Advertisements for TrimBoard are attached to the affidavit as Exhibits B, C, and D. The advertisements state, among other things, that the TrimBoard is "[m]oisture resistant/decay resistant"; is "moisture and weather resistant"; and "[r]esists warping, cupping." Clark summarized the statements that the advertisements make in his affidavit. Additionally, he stated:

9. The LP advertising accurately portrays what I believed I was purchasing for my customers. I was relying on LP to provide a quality product similar to wood trim but with the benefits described in the advertisements. . . .

\*\*\*

11. If I had known that the TrimBoard w[as] not a quality product as represented and warranted, then I would not have purchased the TrimBoard and/or recommend[ed] TrimBoard to Mr. Brown. Instead, I would have purchased another trim product.

The district court granted summary judgment to LP on the remaining claims, denied Brown's request for declaratory relief, and dismissed as moot his motion for class certification. First, the court addressed Brown's fraudulent-misrepresentation claim and found that Brown failed to demonstrate a genuine issue of material fact on whether LP made a representation to Clark—Brown's builder. Second, the court found that to establish a claim for unfair or deceptive trade practices under the Iowa Private Right Act, Brown had to establish at least factual causation between the alleged unfair or deceptive practices and his damages. The court held that because Brown failed to create a genuine issue of material fact on whether a representation was made to Clark, Brown failed to create a genuine issue of material fact on factual causation. Finally, as to Brown's claim for breach of express warranty, the district court determined that the limited warranty did not fail of its essential purpose and was not unconscionable, meaning that Brown's remedy was limited to the warranty's terms.

II. *Discussion*

On appeal, Brown argues that the district court erred in granting summary judgment to LP on his claims for fraudulent misrepresentation, unfair or deceptive practices, and breach of warranty.

-4-

"We review a grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences from that evidence in favor of the nonmoving party." *Smith v. URS Corp.*, 803 F.3d 964, 968 (8th Cir. 2015) (citation omitted). Both parties agree that Iowa law is applicable to the present case.

## A. *Fraudulent Misrepresentation*

Brown argues that the district court erred in granting summary judgment on his fraudulent-misrepresentation claim by focusing only on the element of reliance on affirmative representations. According to Brown, the district court erroneously dismissed this claim after finding that Brown failed to submit evidence that he or Clark, as his builder, relied on specific advertisements or brochures in deciding to purchase TrimBoard. Brown contends that he and all class members actually relied on LP's omission and concealment of material facts in its advertisements that failed to disclose that TrimBoard would rot, swell, warp, or crack when exposed to moisture from rain, lawn sprinklers, or other sources and did not have the decay resistance as advertised. Brown maintains that while he did not rely on any particular advertisement or brochure, he did rely on LP's entire course of conduct. Brown contends that "LP advertised that TrimBoard would last as long as conventional wood[,] and [Brown] and class members relied on LP's omission to tell them otherwise."

For Brown to prevail on his fraudulent-misrepresentation claim under Iowa law, he must prove the following elements:

> (1) defendant made a representation to the plaintiff, (2) the representation was false, (3) the representation was material, (4) the defendant knew the representation was false, (5) the defendant intended to deceive the plaintiff, (6) the plaintiff acted in reliance on the truth of the representation and was justified in relying on the representation, (7) the representation was a proximate cause of plaintiff's damages, and (8) the amount of damages.

-5-

*Gibson v. ITT Hartford Ins. Co.*, 621 N.W.2d 388, 400 (Iowa 2001) (citation omitted).

We focus on the sixth element—justifiable reliance. Brown contends that LP's alleged misrepresentations were passed through a third party—Clark—and then communicated to Brown and relied upon by him. Iowa law provides that "persons who fraudulently misrepresent the truth can be held liable to third parties if they have a 'reason to expect' their misrepresentation will be communicated to third parties." *Clark v. McDaniel*, 546 N.W.2d 590, 593 (Iowa 1996) (quoting Restatement (Second) of Torts § 533 (1977)); *see also United States v. Hawley*, 619 F.3d 886, 897 (8th Cir. 2010) ("The [Iowa Supreme] Court [in *Clark*] expressly adopted section 533 of the Restatement (Second) of Torts (1977) . . . ."). More specifically:

> "The maker of a fraudulent misrepresentation is subject to liability for pecuniary loss to another who acts in justifiable reliance upon it if the misrepresentation, *although not made directly to the other*, *is made to a third person* and the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other, and that it will influence his conduct in the transaction or type of transaction involved."

*Clark*, 546 N.W.2d at 593 (emphasis added) (quoting Restatement (Second) of Torts § 533 (1977)).

The maker of a fraudulent misrepresentation is liable to "'those whom he has reason to expect [the misrepresentation] to reach and influence, although he does not make the misrepresentation with that intent or purpose.'" *Id.* (alteration in original) (quoting Restatement (Second) of Torts § 533 cmt. d (1977)). An objective standard applies to whether one has "reason to expect" reliance by another: "'The maker of the misrepresentation must have information that would lead a reasonable man to conclude that there is an especial likelihood that it will reach those persons and will

influence their conduct.'" *Id.* (quoting Restatement (Second) of Torts § 533 cmt. d (1977)). "[T]he fact that the maker has an advantage to gain, even though it is in some other transaction, by furnishing the misrepresentation for repetition to the third person is of great significance in determining whether he has reason to expect that the *original recipient* should so repeat it." Restatement (Second) of Torts § 533 cmt. e (1977) (emphasis added).

In summary, "a speaker may be liable to indirect recipients of a fraudulent misrepresentation if the speaker 'intends or has reason to expect that its terms will be repeated or its substance communicated to the other, and that it will influence his conduct in the transaction or type of transaction involved.'" *Cromeans v. Morgan Keegan & Co.*, No. 2:12-CV-04269-NKL, 2014 WL 1901197, at *5 (W.D. Mo. May 13, 2014) (applying § 533 as adopted by Missouri courts) (quoting Restatement (Second) of Torts § 533 (1977)). This presumes that there is an "initial, direct recipient of this information" who repeated the speaker's communication to the third party. *Cf. First Horizon Home Loan Corp. v. Apostle* (*In re Apostle*), 467 B.R. 433, 441 (Bankr. W.D. Mich. 2012) ("But, to whom was this [material] misrepresentation made? Somewhat surprisingly, the initial, direct recipient of this information was not identified at trial, although the court infers that the completed closing statement was initially submitted by Apostle to the escrow or title agent who handled the closing.").

As indicated *supra*, the Iowa Supreme Court has adopted and applied the indirect-recipient doctrine of § 533. *See Clark*, 546 N.W.2d 593–94 (holding that used car salesman could be liable to subsequent buyers of car for his fraudulent misrepresentation to original buyers based on his failure to disclose that front end of car of one model year had been welded to back end from car of another model year and finding that experienced car salesman could reasonably expect that his misrepresentation would be passed onto third parties). Brown relies on *Clark* in arguing that no requirement exists that LP's misrepresentation or omission be made directly to Brown or other class members because LP is liable to Brown (and the other

class members) as an indirect recipient of LP's fraudulent misrepresentation. According to Brown, LP had reason to expect that Clark—Brown's builder—would repeat or communicate the message to Brown and that the communication would influence Brown's conduct in purchasing TrimBoard.

The district court correctly recognized that the Iowa Supreme Court *did* adopt the indirect-misrepresentation requirements of § 533 in *Clark*; but, the district court aptly distinguished *Clark* from the present case. In *Clark*, because the trial court had specifically "found that [the defendant-dealer] misrepresented the condition of the car [to the original purchasers]," the issue on appeal was *not* whether the original purchasers were *recipients* of the defendant-dealer's communication. *Id.* at 592. Instead, "[t]he key issue [was] whether the [plaintiffs could] justifiably rely on representations that [the defendant-dealer] made to [the original purchasers]." *Id.* at 593. Here, by contrast, the district court found that Brown presented insufficient evidence that Clark ever *received* a communication from LP. As the district court explained, Clark's affidavit fails to identify "which advertisements he viewed, when he viewed them, or which statements from the advertisement he read and relied upon in advising [Brown] of the suitability of the product." Clark did not indicate that he had "previously viewed the attached advertisements" from LP; in fact, Brown's counsel indicated to the district court that "Clark was provided these exhibits at the time of his sworn affidavit and could only affirm that the advertisements were consistent with materials he recalled viewing some nine to ten years ago." Clark "never state[d] he in fact viewed any advertisements published by LP at all"; instead, he merely indicated that "[t]he LP advertising accurately portrays what [he] believed [he] was purchasing."

We agree with the district court that "nothing in the Clark Affidavit indicates Mr. Clark in fact viewed any materials from LP; rather, it leaves open the possibility that Mr. Clark had heard of TrimBoard from another source . . . and merely asserts now that LP's advertisements were consistent with the product he believed he was

purchasing." Indeed, Brown's counsel conceded as much at oral argument when asked what representations LP made to Clark; he replied, "Unfortunately, [Clark] could not recall what he had seen that made him believe it was a quality product, but he believed, based upon his understanding . . . he couldn't recall exactly what he had seen. He understood it was a quality product."

Furthermore, as the district court noted, Brown failed to provide any "foundation or context for the attached advertisements." While Brown's counsel indicated that the advertisements attached to Clark's affidavit "were taken from LP's website prior to the time Mr. Clark swore his affidavit," Brown produced "no evidence that these same or similar advertisements were disseminated in or around Iowa in 2004 or otherwise accessible by Mr. Clark." Viewing the evidence in the light most favorable to Brown, we, as did the district court, "can only infer that Mr. Clark likely viewed some type of written material containing information about TrimBoard—though not necessarily materials produced by LP—at some point in time prior to purchasing TrimBoard for installation on [Brown's] home." Therefore, we hold that Clark's affidavit is insufficient to create a genuine issue of material fact as to whether Clark—a third party—*received* a communication from LP that he subsequently communicated to Brown and upon which Brown relied.[3]

_____

[3]On appeal, Brown attempts to characterize his case as one of omission instead of affirmative misrepresentation, stating: "Here, . . . [Brown], and members of the putative class, physically observed TrimBoard which appeared to be similar to ordinary wood trim and a suitable product for outdoor use, and TrimBoard would not have been purchased had LP disclosed its true nature." "[A]n inference of reliance is logical in an omission of material facts situation because of the difficulty in proving what the party would have done if it had had the relevant information." *Sollenbarger v. Mountain States Tel. & Tel. Co.*, 121 F.R.D. 417, 434 (D.N.M. 1988).

But Brown's position on appeal is contrary to what he argued before the district court. There, he asserted that Clark *did receive* affirmative misrepresentations from LP about TrimBoard by relying on advertisements for TrimBoard (which, as the district court discussed, Brown never affirmatively proved that Clark "received"). The

## B. *Unfair or Deceptive Practices*

Brown argues that the Iowa Private Right Act specifically proscribes unfair practices and omissions and that LP's entire scheme is an unfair practice for which its omission of truth is actionable. Brown contends that the district court's granting of summary judgment on a tangential issue is reversible error because no requirement exists that Brown or a class member prove direct reliance on omissions. Brown asserts that reliance can be inferred because Brown and the class members would not have purchased the TrimBoard if LP had not concealed or omitted the truth about TrimBoard.

The Iowa Private Right Act provides that any "consumer who suffers an ascertainable loss of money or property *as the result of* a prohibited practice or act in violation of this chapter may bring an action at law to recover actual damages." Iowa Code Ann. § 714H.5(1) (emphasis added). Here, the prohibited practice or act that Brown has alleged is identified in Iowa Code Annotated § 714H.3(1):

> A person shall not engage in a practice or act the person knows or reasonably should know is an *unfair practice*, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or *omission of a material fact*, with the intent that others rely upon the *unfair practice*, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or *omission* in connection with the advertisement, sale, or lease of consumer merchandise, or the solicitation of contributions for charitable purposes.

---

advertisements state, among other things, that the TrimBoard is "[m]oisture resistant/decay resistant"; is "moisture and weather resistant"; and "resists warping, cupping." Those are *affirmative statements*, which Brown now contends are false.

(Emphases added.)[4]

Brown argues that the question of materiality is an objective one. He contends that materiality can be proven through objective evidence to show that the material misrepresentation would have induced a reasonable person's reliance. Before the district court, Brown initially argued only that "the Private Right Act . . . does not require individual reliance." In his motion for reconsideration pursuant to Federal Rules of Civil Procedure 59(e) and 60(b), Brown argued "that causation can be established through objective standards." The district court declined to consider this argument, finding that Brown's "argument that causation can be established through objective standards reflects a new interpretation of the statute" not previously raised as a theory. LP notes that, in this appeal, Brown raises "only his second, untimely theory about reliance in Private Right Act claims" and that he cannot make this argument on appeal. A court of appeals "will typically not consider an issue or a new argument raised for the first time in a motion for reconsideration in the district court." *U.S. Bank Nat'l Ass'n v. Verizon Commc'ns, Inc.*, 761 F.3d 409, 425 (5th Cir. 2014), *as revised* (Sept. 2, 2014), *cert. denied*, 135 S. Ct. 1430 (2015) (citations omitted). But even assuming Brown raised this argument before the district court, we conclude that it fails.

---

[4]The district court noted that "[t]he parties seem to agree that the purported unfair or deceptive practice at issue here is the alleged misrepresentation," not an "omission" of fact. But, before this court, Brown argues that "throughout this litigation, Appellant has made clear that his claim under the Act is grounded in LP's omissions, failure to disclose and concealing the true nature of TrimBoard with the intent that consumers rely on such material omissions in deciding to purchase the product as required by the Act." As explained *supra*, we reject Brown's attempt to recharacterize his claims against LP as involving omissions rather than affirmative misrepresentations. *See supra* Part II.A., at n.3.

Brown argues that the materiality of LP's alleged misrepresentations creates an inference of causation that satisfies factual causation between LP's alleged unfair or deceptive trade practice and Brown's damages. But the cases that Brown cites in support of that argument do not stand for that proposition; instead, they involve other state or federal statutes with different language and requirements.[5]

Our focus is on the precise language of the Iowa Private Right Act—whether Brown "suffer[ed] an ascertainable loss of money or property *as the result of* a prohibited practice." Iowa Code Ann. § 714H.5(1) (emphasis added). "[T]he phrase 'as a result of' can be 'naturally read simply to impose the requirement of a causal connection.'" *Sanders v. Kohler Co.*, 641 F.3d 290, 294 (8th Cir. 2011) (quoting *Brown v. Gardner*, 513 U.S. 115, 119 (1994)). "Until recently, [the Iowa Supreme Court] described causation as consisting of two components: cause in fact and

_____

[5]*See, e.g.*, *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1193 (2013) (involving the Securities Exchange Act of 1934 and holding that "[t]he fraud-on-the-market theory . . . facilitates class certification [in a securities fraud action] by recognizing a rebuttable presumption of classwide reliance on public, material misrepresentations when shares are traded in an efficient market"); *Ballone v. Eastman Kodak Co.*, 109 F.3d 117, 122 (2d Cir. 1997) (holding that "[w]here an ERISA fiduciary makes guarantees regarding future benefits that misrepresent present facts, the misrepresentations are material if they would induce a reasonable person to rely upon them" and *not* stating that establishing materiality creates an inference of causation); *In re Motor Fuel Temperature Sales Practices Litig.*, 867 F. Supp. 2d 1124, 1139 (D. Kan. 2012) ("Under the [Kansas Consumer Protection Act], a supplier has a duty to disclose a material fact if the supplier knows that the consumer is entering into a transaction under a mistake as to the material fact, and the consumer would reasonably expect disclosure of such material fact based on the relationship between the consumer and the supplier, the customs and trade or other objective circumstances." (citations omitted)); *State ex rel. Miller v. New Womyn, Inc.*, 679 N.W.2d 593, 594, 596 (Iowa 2004) (involving an attorney general enforcement action under Iowa's Consumer Fraud Act—not the Private Right Act—under which the burden is on the defendant to demonstrate the reasonable basis for an assertion).

-12-

proximate, or legal, cause." *Garr v. City of Ottumwa*, 846 N.W.2d 865, 869 (Iowa 2014), *reh'g denied* (June 4, 2014) (citations omitted). But the Iowa Supreme Court "no longer refer[s] to proximate or legal cause; instead, [it] use[s] a different formulation, scope of liability." *Id.* (citation omitted). Iowa courts apply a but-for test in determining whether a "defendant in fact caused the plaintiff's harm." *Id.* The Iowa Supreme Court has described that test as follows:

> the defendant's conduct is a cause in fact of the plaintiff's harm if, but-for the defendant's conduct, that harm would not have occurred. The but-for test also implies a negative. If the plaintiff would have suffered the same harm had the defendant not acted negligently, the defendant's conduct is not a cause in fact of the harm.

*Id.* (quotations and citations omitted).

Assuming that § 714H.5 requires merely factual causation, we conclude that Brown failed to establish causation as a matter of law. *See id.* at 870 (explaining that although "[c]ausation is ordinarily a jury question," it may sometimes "be decided as a matter of law" when the "plaintiff[] fail[s] to produce sufficient evidence on causation" (citations omitted)). As explained *supra*, to show causation, Brown must prove that, but-for LP's purported misrepresentation, he would not have elected to purchase TrimBoard and install it on his home. *See id.* at 869. For Brown to satisfy this requirement, he must show that Clark received a representation that LP made. As we explained, Brown has failed to satisfy this showing. *See supra* Part II.A. In summary, as the district court explained:

> [T]he Clark Affidavit—the only evidence before the Court that touches on any representation made by LP to Mr. Clark—contains conclusory statements and insufficient facts to support [Brown's] claim that Mr. Clark ever viewed advertising materials published by TrimBoard or that

the materials Mr. Clark may have viewed contained any statements of fact concerning TrimBoard's ability to withstand moisture and decay.

Because Brown produced no evidence "that Mr. Clark was the recipient of any representation made by LP," we agree with the district court's conclusion that Brown "has failed to generate a genuine issue of material fact with respect to causation."

## C. *Breach of Warranty*

Finally, Brown argues that the terms of LP's limited warranty cannot be enforced under the present circumstances and that the district court's decision is not based on relevant law or fact. He asserts that LP breached the limited warranty by inadequately compensating him for the repair and replacement of the faulty TrimBoard. First, he argues that the limited warranty failed of its essential purpose by inadequately compensating him for the costs to repair the direct and consequential damages to his home. Second, he maintains that LP's attempt to limit its liability for the faulty TrimBoard—which Brown contends that LP knew was defective—renders the limited warranty unconscionable.

## 1. *Failure of Essential Purpose*

Section 554.2719 of the Iowa Code Annotated concerns limitations of remedies and is substantively identical to § 2-719 of the Uniform Commercial Code (UCC). Section 554.2719(2) provides that "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this chapter." The Iowa Supreme Court has elaborated on the meaning of "essential purpose," stating:

> A remedy's essential purpose "is to give to a buyer what the seller promised him." *Hartzell v. Justus Co., Inc.*, 693 F.2d 770, 774 (8th Cir. 1982). The focus of analysis "is not whether the remedy compensates for all damage that occurred, but that the buyer is provided with the product

as seller promised." *Brunsman v. DeKalb Swine Breeders, Inc.*, 952 F. Supp. 628, 635 (N.D. Iowa 1996); *Nelson v. DeKalb Swine Breeders, Inc.*, 952 F. Supp. 622, 628 (N.D. Iowa 1996).

> Where repair or replacement can give the buyer what is bargained for, a limitation of remedies does not fail of its essential purpose. *Badgett Constr. & Dev. Co. v. Kan-Build, Inc.*, 102 F. Supp. 2d 1098, 1105 (S.D. Iowa 2000). In other circumstances, however, repair or replacement is not sufficient, and then a court may find the remedy failed of its essential purpose. *See Select Pork, Inc. v. Babcock Swine, Inc.*, 640 F.2d 147, 150 (8th Cir. 1981) (finding a limitation of remedies provision failed of its essential purpose when sellers did not deliver special pigs as described in a contract; the court found the limitation of remedies provision would have applied only if the special pigs had been delivered).

*Midwest Hatchery & Poultry Farms, Inc. v. Doorenbos Poultry, Inc.*, 783 N.W.2d 56, 62–63 (Iowa Ct. App. 2010).

"The issue of whether a limited remedy fails of its essential purpose is separate and distinct from whether a limited remedy is unconscionable." *Baptist Mem'l Hosp. v. Argo Constr. Corp.*, 308 S.W.3d 337, 345 (Tenn. Ct. App. 2009) (citing 1 James J. White & Robert S. Summers, Uniform Commercial Code § 12–10 (5th ed. 2006)). When a court deems a limitation of remedy unconscionable, it is void. *Id.* at 345–46 (citing 67A Am. Jur. 2d *Sales* § 843 (2003)). "In contrast with failure of essential purpose, the determination of unconscionability focuses on the circumstances as they existed when the parties entered into the contract." *Id.* (footnote omitted) (citing 67 Am. Jur. 2d *Sales* § 213 (2003)).

This court has considered § 554.2719 on prior occasions. *See Hartzell*, 693 F.2d at 773–75 (holding that where district court instructed the jury that if it found for home buyer on question of liability for roof damage, it should fix amount of money which would reasonably compensate buyer for expenses of necessary repairs and, if

-15-

jury found there were structural defects which could not be repaired, jury could also award as damages difference between fair market value of home had there been no breach of warranty or negligence, and fair market value of home after all repairs were made, jury's verdict for buyer in amount almost exactly equal to buyer's evidence of cost of repairs plus diminution in market value indicated that jury must have found that seller's limited warranty failed of its essential purpose); *Select Pork*, 640 F.2d at 149 (finding no error in the district court's conclusion that the limitation-of-remedies clause at issue failed of its essential purpose because the defendant-sellers of pigs did not deliver the specific breeds of pigs described in the agreement).

The Iowa Court of Appeals has also considered § 554.2719 in a case in which "no dispute on appeal [existed] that [the seller of chickens] breached the contract by providing nonconforming chickens." *Midwest Hatchery*, 783 N.W.2d at 62. The seller invoked the limitations clause contained in the contract, which provided that if the seller breached the contract, the buyer was entitled to either replacement or refund of the purchase price, at the seller's option. *Id*. The Iowa Court of Appeals agreed with the district court's conclusion "that the limited remedy provision of the parties' contract failed of its essential purpose." *Id*. at 63. At the time that the buyer informed the seller that the chickens were nonconforming, the buyer "was not interested in having the pullets replaced, and [the seller] made no offer to replace them." *Id*. at 64. The court agreed that when the seller received notification of the breach, it "could have exercised its option under the contract, taken back the entire flock, and either replaced the chickens with eighteen week old pullets or refunded the entire purchase price. The record support[ed] the conclusion that this did not happen because . . . it was plainly impractical." *Id*. According to the court, it would not have been efficient for the parties to replace the chickens that the seller had delivered, and "it [did] not appear that either party was interested in the option of removal and refund." *Id*. The court found "that replacement or refund was not practical at the time of trial. By that time, the chickens had reached the end of their productive life and were about to be

-16-

rendered. As a result, replacement was no longer possible." *Id*. The court, therefore, affirmed the district court's conclusion that "the limitation of remedies provision in the parties' contract failed in its essential purpose." *Id*.

As the district court observed, while *Select Pork*, *Hartzell*, and *Midwest Hatchery* generally instruct us on how § 559.2719 operates, they are factually distinguishable: "[I]n each case, the goods provided were nonconforming, their defects *readily apparent*, and the contractual limitations of remedies did not contemplate long-term use (i.e., warranty)." (Emphasis added.) Here, Brown is essentially arguing that the warranty fails of its essential purpose because the defect was *latent* and could not have been discovered. *See Bapt. Mem'l Hosp.*, 308 S.W.3d at 346. Some jurisdictions have held "that a limited remedy can be found to fail of its essential purpose if the goods contain a latent defect that cannot be discovered upon reasonable inspection." *Id*. at 348 (citing *Viking Yacht Co. v. Composites One LLC*, No. 05–538, 2007 WL 2746713, at *6 (D.N.J. Sept. 18, 2007); *Comind, Companhia de Seguros v. Sikorsky Aircraft Div. of United Techs. Corp.*, 116 F.R.D. 397, 413 (D. Conn. 1987); *Majors v. Kalo Labs., Inc.*, 407 F. Supp. 20, 22–23 (M.D. Ala. 1975); *Cox v. Lewiston Grain Growers, Inc.*, 936 P.2d 1191, 1198 (Wash. Ct. App. 1997); *Latimer v. William Mueller & Son, Inc.*, 386 N.W.2d 618, 625 (Mich. Ct. App. 1986); *Wilson Trading Corp. v. David Ferguson, Ltd.*, 244 N.E.2d 685, 688 (N.Y. 1968)).

But "numerous jurisdictions" have held "that a latent defect does not cause an exclusive contractual remedy to fail of its essential purpose." *Id*. at 349 (citing *Arkwright–Boston Mfrs. Mut. Ins. Co. v. Westinghouse Elec. Corp.*, 844 F.2d 1174, 1179–80 (5th Cir. 1988); *Wis. Power & Light Co. v. Westinghouse Elec. Corp.*, 830 F.2d 1405, 1412–13 (7th Cir. 1987); *Boston Helicopter Charter, Inc. v. Agusta Aviation Corp.*, 767 F. Supp. 363, 374 (D. Mass. 1991); *Hart Eng'g Co. v. FMC Corp.*, 593 F. Supp. 1471, 1479 (D.R.I. 1984); *Regents of the Univ. of Colo. ex rel. Univ. of Colo. at Boulder v. Harbert Constr. Co.*, 51 P.3d 1037, 1041 (Colo. Ct. App.

2001); *Clark v. Int'l Harvester Co.*, 581 P.2d 784, 802–03 (Idaho 1978)). We conclude that the Iowa Supreme Court would follow this majority rule. *See Ashley Cty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) ("Our task in [a] diversity case is to apply [state] law and, where an issue has not been decided by the [highest court of that state], to predict how it would decide the issue." (citation omitted)).

We also find persuasive *Kelly v. Georgia-Pacific LLC,* 671 F. Supp. 2d 785 (E.D.N.C. 2009)—a case involving nearly identical facts to the present case. In that case, the plaintiff constructed a home through the use of a builder, who selected and purchased materials for construction. *Id*. at 788. The builder purchased and installed in the plaintiff's home a material called PrimeTrim, a product for use on the exterior of homes as window and door trim. *Id*. The defendant-manufacturer of PrimeTrim "marketed, advertised, and warranted that PrimeTrim was fit for the ordinary purpose for which wood trim is used, free from defects, suitable for exterior use, reliable, and superior to wood." *Id*. After initial installation, moisture penetrated the PrimeTrim, causing damage to both the trim itself and the walls and sheathing of the home. *Id*. The plaintiff brought suit against the defendant-manufacturer, alleging, among other things, breach of express warranty. *Id*. PrimeTrim was covered by a limited warranty that provided for "[r]epair of the affected trim" or "[c]ash payment to the owner equivalent to the reasonable cost of repair or replacement of the affected trim" up to "two times the original sales price of the affected trim." *Id*. at 789 (alterations in original) (quotations and citations omitted). The plaintiff argued that the "court should not limit his remedy to the limited warranty because the limited warranty fails of its essential purpose and therefore does not serve as an adequate remedy." *Id*. at 798. Specifically, the plaintiff asserted "that the remedies provided under the limited warranty would not be adequate because either the cap on payments would be insufficient or replacing the defective product with more PrimeTrim would not remedy the problem." *Id*. Relying on North Carolina's adoption of UCC § 2-719—a provision identical to Iowa's § 554.2719—the court concluded that "the remedy cap

of double the sales price of the PrimeTrim . . . is consistent with N.C. Gen. Stat. § 25–2–719, and the limited warranty does not fail of its essential purpose." *Id.* (citations omitted).

Brown makes no effort to distinguish or even discuss *Kelly*. Instead, he relies on *Holbrook v. Louisiana-Pacific Corp.*, No. 3:12CV484, 2015 WL 1291534 (N.D. Ohio Mar. 23, 2015) (order granting in part and denying in part LP's motion for summary judgment). *Holbrook* is a case against LP based on the defectiveness of TrimBoard. In that case, the plaintiff argued that LP's limited warranty—the same one as in the present case—failed of its essential purpose based on the plaintiff's testimony that repairing and replacing all of the defective TrimBoard would cost him between $30,000 and $32,000. *Id.* at *2. The plaintiff contended that the warranty's provision capping damages at twice the purchase price of the new TrimBoard therefore failed of its essential purpose. *Id.* The district court applied Ohio law that "'[a] limited remedy fails of its essential purpose when the aggrieved party cannot obtain the intended benefit of the remedy for which it bargained'" and that such a situation often "'occurs . . . where the parties agree that the buyer's only remedy for the seller's breach of warranty is repair or replacement of the goods sold.'" *Id.* at *6 (quoting *Nat'l Mulch & Seed, Inc. v. Rexius Forest By-Prods., Inc.*, No. 2:02-CV-1288, 2007 WL 894833, at *29 (S.D. Ohio Mar. 22, 2007)). While the court acknowledged that LP never refused to fulfill its obligations under the warranty, it held that Ohio law permitted the plaintiff to prove that the warranty still failed of its essential purpose "because a jury could find the warranty covers only a fraction of Holbrook's allegedly substantial—and foreseeable—economic hardship." *Id.* (citing *Daniel A. Terrieri & Sons, Inc. v. All. Wall Corp.*, No. 95 C.A. 11, 1996 WL 148596, at *6 (Ohio Ct. App. Mar. 29, 1996) (holding a warranty limited to replacing defective goods failed of its essential purpose because the warranty "would not be adequate to cover [the buyer's] actual damages and enable it to receive the benefit of its bargain herein")).

*Holbrook* is inapplicable to the present case because its conclusion is dependent upon Ohio case law not present in Iowa. We, like the district court, also note that "there is no evidence—and [Brown] makes no allegation—that the purported defects in the TrimBoard were not remedial and could not be repaired or replaced." (Citing *Midwest Hatchery*, 783 N.W.2d at 63.) Finally, we, like the district court, find persuasive the "conclusions drawn by the *Kelly* court" and likewise find that "the mere fact that the Limited Warranty does not compensate [Brown] for the entirety of his damages does not mean it has failed of its essential purpose." (Citing *Midwest Hatchery*, 783 N.W.2d at 63.)

### 2. *Unconscionability*

Brown also argues that LP's limited warranty is unenforceable on account of its unconscionability. *See* Iowa Code Ann. § 554.2302(1) ("If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.").

Iowa law provides that "[a] contract is unconscionable where no person in his or her right senses would make it on the one hand, and no honest and fair person would accept it on the other hand." *Bartlett Grain Co., LP v. Sheeder*, 829 N.W.2d 18, 27 (Iowa 2013) (quotation and citation omitted). To determine whether a contract is unconscionable, Iowa courts "examine factors of assent, unfair surprise, notice, disparity of bargaining power, and substantive unfairness." *Id*. (quotation and citation omitted). But the Iowa Supreme Court has cautioned that "the doctrine of unconscionability does not exist to rescue parties from bad bargains." *Id*. (quotation and citation omitted). Under Iowa law, unconscionability has two components: procedural and substantive. *Id*. Procedural unconscionability "includes the existence of factors such as sharp practices[,] the use of fine print and convoluted language, as

well as a lack of understanding and an inequality of bargaining power." *Id*. (alteration in original) (quotation and citation omitted). Substantive unconscionability "includes harsh, oppressive, and one-sided terms." *Id*. (quotation and citation omitted). A court determines unconscionability at the time that the parties made the agreement. *Id*. Iowa law does not require both procedural and substantive unconscionability to find a contract provision unconscionable; instead, either type of unconscionability may render the contract provision unconscionable. *See In re Marriage of Shanks*, 758 N.W.2d 506, 516–19 (Iowa 2008) (addressing procedural unconscionability even after finding a lack of substantive unconscionability).

The Fourth Circuit recently held, as a matter of law, that LP's limited warranty—the same one at issue in the present case—is not substantively unconscionable. *Hart v. Louisiana-Pac. Corp.*, No. 13-2375, 2016 WL 908878, at *1 (4th Cir. Mar. 10, 2016) (per curiam). *Hart* was a class-action lawsuit against LP, "alleging TrimBoard 'prematurely deteriorates, rots, swells, buckles, delaminates, absorbs water, warps and/or bulges under normal conditions,' resulting in 'water and structural damages[,] . . . growth of mold mildew, fungi, and insect infestation in the structures in which it is installed.'" *Id*. at *2 (alterations in original) (citation omitted). As in the present case, the plaintiffs "claimed the Warranty's limited remedy provision was unconscionable because [LP] allegedly knew that TrimBoard was defective but sold it anyway." *Id*.

Applying North Carolina law, which requires both procedural and substantive unconscionability, the Fourth Circuit "conclude[d] the Warranty at issue here is not unconscionable." *Id*. at *5. The court "assume[d] without deciding that [LP's] alleged knowledge of TrimBoard's ineffectiveness may be evidence of the kind of disparity in bargaining power and unfair surprise often indicative of procedural unconscionability." *Id*. at *6 (citation omitted). But it "fail[ed] to see, at least under these circumstances, how advanced knowledge could have established substantive

-21-

unconscionability." *Id*. To show the lack of substantive unconscionability, the court cited the plaintiffs' evidence that LP "knew Trimboard would, on average, fail within nine years, yet still warranted the product for ten years and offered twice the purchase price or, after 2005, the cost of replacement as a remedy." *Id*. The court also rejected "the broad proposition that the *terms* of a warranty are necessarily substantively unconscionable solely because one party conceals certain information during the bargaining process." *Id*. Instead, the court explained, a link must exist "between the defect and the objective unfairness of the warranty terms." *Id*. at \*7 (citations omitted).

Ultimately, the court, sitting in diversity, predicted that North Carolina courts would not find unconscionable the terms of the limited warranty, which disclaimed consequential damages but also "offered to pay to replace defective TrimBoard or refund twice the purchase price paid for TrimBoard that failed within ten years of purchase." *Id*. The court acknowledged that North Carolina law authorizes contractual provisions disclaiming consequential damages for economic loss, meaning that such provisions are not presumptively unconscionable. *Id*. at \*8. Additionally, it found that North Carolina law permitted "remedies, similar to the ones at issue here, that limit a buyer's recovery to the purchase of replacement goods or the repayment of the purchase price." *Id*. (citations omitted). After concluding that the limited remedy's terms were not "per se or categorically unconscionable," the court measured the fairness of the limited warranty "in the context of this case." *Id*. To do so, the court "consider[ed] the default remedies that would otherwise have been available to [the plaintiffs] in the absence of the Warranty's limitations." *Id*. (citing N.C. Gen. Stat. Ann. §§ 25-2-714, 25-2-715 (stating that the measure of damages is the difference between the value of the goods as warranted and the value of the defective goods accepted, plus the potential of incidental and consequential damages)). "[A]ssuming the value of the defective TrimBoard is zero," the court found that the plaintiffs' damages "would have been equal to the TrimBoard's original purchase price." *Id*. But

the court observed that LP's limited warranty "provides twice that amount." *Id*. Furthermore, the court pointed out that "by offering a ten-year warranty, [LP] granted [the plaintiffs] a limited remedy in years seven through ten that would otherwise have been extinguished after the expiration of the repose period." *Id*. at *9. In summary, the court concluded that

> assuming the truth of [the plaintiffs'] evidence, [LP] knew TrimBoard was likely to fail within nine years, but nevertheless agreed to warrant the product for ten years and offered purchasers twice their money back or the cost of replacement if and when their TrimBoard did fail. The Warranty also extended that remedy beyond the point that [LP's] liability would otherwise have been extinguished by the statute of repose. We doubt that North Carolina courts would find that bargain harsh, oppressive, or one-sided. *See Harbison v. Louisiana–Pacific Corp.*, 602 F. App'x 884, 887 (3d Cir. 2015) (holding, in a similar case involving TrimBoard, "because the warranty . . . provides [consumers] with a benefit [they] would not otherwise have, the damages limitation [is] not unconscionable"). As a result, [LP's] alleged advanced knowledge about TrimBoard's ineffectiveness alone will not sustain a finding under North Carolina law that the Warranty's limited remedy is unconscionable.

*Id*. (fourth, fifth, sixth, and seventh alterations in original).

In *Harbison v. Louisiana-Pacific Corp.*, the plaintiff alleged that LP "knew that its express promise to pay 'twice the original purchase price of the affected trim' would be less than the damage sustained by Plaintiff and other end users of the TrimBoard product." No. 13CV0814, 2014 WL 469936, at *9 (W.D. Pa. Feb. 6, 2014). The district court, applying Pennsylvania law, found that LP's limited warranty was not *substantively* unconscionable, explaining:

> Even accepting the factual allegations as true, Defendant's combined knowledge about the product and its limitation of liability

-23-

language in the express warranty does not render the *language* of the express warranty "unconscionable." Defendant agreed to pay a set amount in its express warranty, which is permissible under the UCC and Pennsylvania's Commercial Code. The express terms of that warranty are binding on Defendant—and on Plaintiff.

*Id.*

The Third Circuit affirmed the district court, adding that LP's warranty was also not *procedurally* unconscionable. *Harbison*, 602 F. App'x at 886–87. According to the court, "the degree of procedural unconscionability is low because the warranty was provided to Harbison with the TrimBoard, and the warranty at issue is featured in the first paragraph and not in fine print." *Id.* (footnote omitted). The court also affirmed the district court's finding of no substantive unconscionability, explaining that "Louisiana–Pacific chose to offer a ten-year warranty to consumers. It did not have to offer this benefit. The damages limitation contained in the warranty was the condition on which it was willing to extend the benefit of the warranty." *Id.* at 887. The court noted that the plaintiff would not have had any remedy under the contract for TrimBoard's failure seven years after its installation but for LP's ten-year warranty and that because LP

> did offer the ten-year warranty as written, Harbison has the opportunity to recover twice the value of the TrimBoard that was affected. So the warranty included with the TrimBoard is actually somewhat favorable to Harbison because, even if it does not provide him with all the relief he wants, it provides him with more relief than nothing.

*Id.* In summary, the court found that "because the warranty was prominently featured within the contract and because the warranty as a whole provides Harbison with a benefit he would not otherwise have, the damages limitation was not unconscionable." *Id.*

We agree with the analysis set forth by both the Fourth Circuit in *Hart* and the Third Circuit in *Harbison* and therefore hold that LP's limited warranty is neither procedurally nor substantively unconscionable.

## III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____