NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0467n.06

Case No. 18-3813

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JANE MILLER, on behalf of herself and all others similarly situated, | ) ) ) ) | **FILED**<br>Sep 04, 2019<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellant, | ) | |
| v. | ) ) | |
| KENT NUTRITION GROUP, INC.; GRAIN PROCESSING CORPORATION; NSF INTERNATIONAL, | ) ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| Defendants, | ) ) | |
| KENT PET GROUP, INC., | ) | |
| Defendant-Appellee. | ) | |

BEFORE: KETHLEDGE, WHITE, and BUSH, Circuit Judges.

**JOHN K. BUSH, Circuit Judge.** Cat litter flushed down the toilet has spilled into our court. The product at issue bore the brand World's Best Cat Litter™ ("WBCL"), but Jane Miller claims it was hardly the pick of the litter. She contends its maker, Kent Pet Group, Inc. ("Kent"), marketed WBCL as flushable when, in fact, it was not. Miller maintains it clogged her home sewage system. Though there is little disagreement that Miller experienced sewage backups, she has produced insufficient evidence for a reasonable jury to find that Kent made any false representation in marketing WBCL as flushable. We therefore **AFFIRM** the district court's grant of summary judgment in favor of Kent.

In the background of this fight purrs a cat named Toby, adopted by Miller in 2005. Toby's preference for WBCL dates back to a previous owner, who purchased it for the cat. Miller also preferred the product because it was marketed as "flushable" and "septic and sewer safe." Miller alleges that she relied on Kent's marketing to use and flush WBCL for many years. After almost a decade with WBCL, Toby would do business with no other brand, so Miller was stuck with buying it.

For many years Kent's marketing claims regarding WBCL were substantiated by only Kent's own internal testing procedures. In 2006 Kent bolstered its boasts with findings of a third-party laboratory that WBCL was indeed flushable as well as biodegradable. However, in 2011 a competitor cast doubts on Kent's claims, prompting the Federal Trade Commission to determine that WBCL may not have been the cat's meow that Kent claimed it was. So, Kent removed labelling from the package that proclaimed WBCL to be "flushable" and committed to more rigorous product testing. When this testing concluded in 2014, Kent resumed marketing WBCL as flushable, although it was no longer advertised as biodegradable.

That same year, Miller's concerns with WBCL began. After she experienced a clog and backup of sewage into her home, Miller stopped flushing WBCL, hoping that would fix the problem. But an unmaintained sewage system, unlike a mythical cat, does not have nine lives. A year after the first incident, Miller experienced another sewage backup, worse than the first, and this time her plumber discovered that her drains were seriously clogged with cat waste and litter.

In September 2015 the cat's owner brought her claims in Ohio state court, and Kent dragged them into federal court through removal. Miller alleged common law claims of breach of implied warranty, unjust enrichment, and negligent misrepresentation as well as a claim under Iowa's consumer fraud statute. Kent is located in Iowa, and the district court held that Miller had

standing under Iowa's consumer fraud statute, which holding neither party disputes on appeal. The district court dismissed the common law claims, leaving only the Iowa statutory count. In support of this cause of action, Miller asserts that Kent's misleading representations about flushability not only led to the damage to her plumbing, but also caused her to pay a higher price for the litter than she would have paid otherwise. The district court granted summary judgment to Kent as to the statutory claim, which is the only issue in this appeal.

The relevant statutory provision, Iowa Code § 714H, allows consumers a private right of action for damages in certain circumstances:

> A consumer who suffers an ascertainable loss of money or property as the result of a prohibited practice or act in violation of this chapter may bring an action at law to recover actual damages. The court may order such equitable relief as it deems necessary to protect the public from further violations, including temporary and permanent injunctive relief.

Iowa Code § 714H.5(1). A "prohibited practice" is defined as

> an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise, or the solicitation of contributions for charitable purposes.

*Id.* § 714H.3(1).

The parties disagree over the statutory elements, but the district court focused on only one, causation, which that court found to be "naturally read" from the words "as the result of" appearing in the statute. R. 73, PageID 3509 (quoting *Brown v. La.-Pac. Corp.*, 820 F.3d 339, 348–49 (8th Cir. 2016)). The district court explained that Iowa courts use a but-for test of causality that has a negative element: "[i]f the plaintiff would have suffered the same harm had the defendant not acted negligently, the defendant's conduct is not a cause in fact of the harm." *Id.* (quoting *Garr v. City of Ottumwa*, 846 N.W.2d 865, 869 (Iowa 2014)). According to the court, this requirement meant

3

that if Miller would have purchased WBCL even without Kent's alleged misrepresentations, Miller could not prove causality.

The district court determined that there was at least one other reason, besides Kent's marketing, that inspired Miller to purchase WBCL—namely, Toby the cat. The feline was finicky, and no brand but WBCL would do. Additionally, the court found that Miller's sewage system would have clogged even without Kent's allegedly false claims because the sewage system needed repairs. Therefore, the court found as a matter of law that, even though "World's Best *could have* contributed to the clogs in the septic system[,] . . . World's Best was not the cause of the clogs." R. 73, PageID 3511. The district court, having found that Miller could not prove that WBCL had caused her harm, granted Kent's motion for summary judgment and denied Kent's motions to exclude as moot.

Although the district court focused on causation, we may affirm "on any grounds supported by the record even if different from the reasons of the district court." *Dixon v. Clem*, 492 F.3d 665, 673 (6th Cir. 2007) (internal quotation marks omitted). It is not clear under Iowa law whether the district court is correct that Toby's preference for WBCL and the independent problems with the sewage system required summary judgment for Kent on causation, given that the Iowa Supreme Court has adopted the causal requirements of Restatement (Third) of Torts, *see State v. Tyler*, 873 N.W.2d 741, 749 (Iowa 2016). Section 27 of this Restatement recognizes that there may be several legal causes of a harm, *see* Restatement (Third) of Torts § 27 (Am. Law Inst. 2010). Applying § 27, the Iowa Supreme Court has recognized that the but-for test

> operates to identify factual causation in each instance, but requires further assistance when multiple acts occur, each of which alone would have been a factual cause in the absence of the other act or acts. This assistance now comes in the form of a legal principle to govern the outcome. When such multiple causes are present, our law declares each act to be a factual cause of the harm.

*State v. Tribble*, 790 N.W.2d 121, 127 (Iowa 2010) (citing Restatement (Third) of Torts § 27 at 376).

However, a deep dive into the causal nature of Miller's harms is unnecessary to resolve this appeal. That is because, to prevail, Miller must show as an initial matter that Kent committed a "prohibited practice or act in violation of this chapter," Iowa Code § 714H.5(1). The only conduct of Kent that Miller identifies as falling into this category are Kent's alleged misrepresentations that WBCL is flushable, and Kent's failure to warn that WBCL is flushable only in well-maintained systems. Therefore, if WBCL is flushable and Kent's claim is not misleading, then Kent could not have deceived Miller (or anyone else) under Miller's theory of liability.

Kent cites to its experts' opinions that WBCL is flushable "under normal usage conditions." Appellee Br. at 39; R. 44, PageID 337. In light of this proof, the burden is on Miller to "come forward with specific facts showing" that there is a triable issue that would allow a reasonable jury to find that WBCL is not flushable under such typical circumstances. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations and internal quotation marks omitted). To meet this burden Miller must present more than a mere "scintilla of evidence" in support of her position. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Accordingly, we must consider not only Kent's expert testimony but also the expert testimony presented by Miller, and do so in the light most favorable to Miller. *See United States v. Diebold*, 369 U.S. 654, 655 (1962) (noting that material in the record must be examined in "the light most favorable to the party opposing the motion"). The problem for Miller, however, is that her expert (Drew McAvoy) equivocated. McAvoy never directly opined that WBCL is not

flushable. Instead, when asked at his deposition whether he could "say one way or the other . . . that World's Best Cat Litter is not flushable and septic safe," McAvoy only responded that "I haven't seen anything that shows that it is." R. 43-2, PageID 949. McAvoy repeatedly stated that he simply did not have enough information based on available testing to determine whether WBCL is flushable or not. And while he agreed with the characterization that "the testing that was done on [WBCL] was insufficient to establish that [WBCL] can be claimed to be flushable and septic safe," *id.* at PageID 954–55, he also acknowledged that "[t]here's nothing there that demonstrates that [WBCL is] not [flushable]," *id.* at PageID 950. In short, on the central question of whether or not WBCL is flushable, the cat got the tongue of Miller's expert.

In addition to asserting that Kent misrepresented that WBCL is flushable, Miller argues that Kent was required to "warn purchasers of WBCL not to flush it *unless* the homeowners know, for a fact, that there are no latent maintenance issues with their plumbing. Otherwise, the latent maintenance issues will go from latency to an ugly reality once they use [WBCL]." Appellant Br. at 11. In short, Miller contends that Kent violated the Iowa statute by selling a product that only works in certain situations—and not warning consumers about that limitation. Once again, however, Miller's own expert undercuts the factual predicate. The evidence Miller produced for summary judgment tends to show that consumers knew or ought to have known that WBCL works only in a properly maintained septic system.

It is undisputed here that Miller actually suffered from back-ups to her sewage system. She asserts that this means that WBCL is "not flushable in fact." Appellant Br. at 9. And she maintains that she "knows that WBCL is not flushable . . . because of the clogs she experienced and the fact that cat waste and WBCL litter was found in her drains long after she stopped flushing it." *Id.* at 10. However, Kent's expert witnesses explained that "flushability" refers to (and assumes) a

working, well-maintained sewage system: "World's Best Cat Litter would not clog or stick within a properly functioning residential sewer pipe. . . . [nor] clog or stick within a properly functioning residential sewage ejector pump, pit, or attached piping." R. 44-3, PageID 1212. And at his deposition, McAvoy conceded that without proper maintenance of a septic system, including "periodic inspection of the drain line by a professional," an owner could expect reoccurring clogs in her septic system. R. 43-2, PageID 922–23. Thus, even according to Miller's own witness, unless Miller's septic system was properly maintained, she ran the risk of clogs.

Miller does not contend that WBCL needed to be flushable under *any* conditions—that is, regardless of whether the sewage system is well maintained or not. That would be a difficult position for her to take, given that *no* product, except for perhaps a clog-busting solution, would be flushable in an unmaintained sewage system.

It is also undisputed that there was a cat's cradle of issues with Miller's septic system. In fact, McAvoy identified an improper three to four feet dip in the run of the drain line, the presence of tree roots, and corrosion in Miller's pipe as outstanding issues with Miller's septic system. *Id.* at PageID 919–20. Further, Miller had not engaged in periodic maintenance and, as her expert conceded, "[o]bviously she needed her drain line cleaned." *Id.* at PageID 974. The evidence on the record thus presents no genuine dispute that Miller did not have a properly maintained home sewage system.

Importantly, Miller experienced two incidents of sewage backups. The first was in March 2014, when her toilet clogged and she called a plumber to fix it. After this experience Miller stopped flushing WBCL, though she continued to buy it for Toby. Then, in April 2015, Miller experienced another backup, and she again had a plumber clean the system. On this occasion, the plumber ran a camera through Miller's sewage lines, and discovered WBCL in them. Miller argues

that the fact that there was still WBCL in the lines a year after she stopped flushing the product shows that it must not be flushable. But it takes little curiosity to kill this argument. The record clearly shows that the issues with her system predated the first clog, and therefore backups which occurred after she stopped flushing WBCL (and before she undertook the necessary maintenance) do not constitute proof that the product is unflushable. This conclusion is buttressed by the fact that after she accomplished the necessary maintenance, Miller resumed flushing WBCL for a period of approximately six weeks, during and after which she experienced no issues. R. 43-2, PageID 924–25.

Miller properly argues that it is not the place of a court to weigh the evidence before it at the summary judgment stage. However, Miller has not placed any evidence on the record that a jury could weigh to properly conclude that WBCL is not flushable. One expert, Kent's, says that WBCL is flushable. The other expert, Miller's, says he is unsure whether WBCL is flushable, and further that it is flushable only in a properly maintained septic system, which Miller undisputedly did not have. The only conclusion that a reasonable jury could reach—based on the evidence in the record at the time of the motion for summary judgment—is that WBCL is a flushable product in a properly maintained septic system. That WBCL may have been found in the pipes of Miller's clogged home sewage system is insufficient to establish a triable issue as to whether Kent's representations about flushability were false, given the uncontroverted proof that Miller's system was improperly maintained. Because Miller has not adduced evidence which would allow a reasonable jury to find in her favor, she cannot show a misrepresentation that could serve as the basis for her claim for damage to the sewage system. Nor has she shown that the claim of "flushable" without the additional language "in a properly maintained system" is misleading. A reasonable consumer would not assume that the litter would be flushable no matter the condition

of the consumer's pipes or septic system.

Finally, Miller asserts that she suffered harm in the form of an unearned price premium which Kent charged for WBCL. Miller's theory is that by falsely claiming that WBCL was flushable, Kent was able to charge more for it than it would have otherwise. According to Miller, Kent's advertising of WBCL as flushable was "deceptive, . . . a misrepresentation, and it omit[ted] material facts," and the windfall which Kent collected from this "could not have been incurred but-for the representation that WBCL was flushable." Appellant Br. at 26.

This last attempt to bell a cat again requires Miller to show a misrepresentation on Kent's part when it marketed WBCL as flushable. For the same reasons that her sewage damage argument does not succeed, this claim also fails. Miller did not submit evidence to create a genuine dispute to allow a reasonable jury to find that WBCL is not flushable.

For the foregoing reasons, we **AFFIRM** the district court's judgment.